26 C.C.P.A. (Patents)

### GEORGIEV v. FRUTH.

**Patent Appeal No. 4071.**

Court of Customs and Patent Appeals.
Feb. 27, 1939.

H. H. Benjamin, of Washington, D. C. (Morris Hirsch and Dean, Fairbank, Hirsch & Foster, all of New York City, of counsel), for appellant.

Leon Robbin, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office involving a patent of appellee, No. 2,020,-408 for a "Condenser Foil Terminal," issued November 12, 1935, upon an application, Serial No. 699,658, filed November 25, 1933, and an application for a patent by appellant for "Electrode Terminal Construction," Serial No. 569,926, filed October 20, 1931.

The two counts involved originated in the patent of the appellee and read as follows:

"1. A terminal for electrolytic condenser foils comprising a terminal member, a condenser foil wrapped directly around said terminal member to provide one or more folds in said foil and direct contact with said member engaged within one or more of said folds and means securing said member to said foil within the folded area of the latter.

"2. A terminal for electrolytic condenser foils comprising a terminal member having a flattened portion, a condenser foil wrapped directly around said terminal member to provide one or more folds in said foil and direct contact with said member engaged within one or more of said folds and means securing said member to said foil within the folded area of the latter."

As the earliest date alleged by appellee for conception of his invention was later than the filing date of appellant's applica-

tion, an order to show cause why judgment should not be rendered against him was issued. A motion to dissolve the interference was then made by appellee on the ground that the counts were not supported by the disclosure of appellant. The Primary Examiner denied the motion and the Examiner of Interferences thereafter awarded priority of invention of the subject matter to appellant. Upon appeal to the Board of Appeals, the decision of the Examiner of Interferences was reversed on the ground that the application of appellant did not disclose the structural limitations of the counts, and priority of invention was awarded to appellee.

The subject matter of the invention together with a statement showing the similarity in purpose and structure of both parties is set forth by the board as follows:

"The two counts relate to the construction of an electrolytic condenser, and more particularly to the terminal portions of one of the condenser foils. Electrolytic condensers of the type here involved are formed by rolling two sheets of foil spaced by an absorbent member containing an electrolyte into the form of a cylinder. Each sheet of foil must be provided with some sort of terminal for connection to the system with which the device is used. It is desirable that the foil be rather thin in order that the maximum surface may be obtained at a minimum expense and in a minimum space.

"Fruth proposed to use a separate element in forming his foil terminals, which element was originally in the form of a wire of the same material as the foil. Fruth proposed to flatten this wire at one end, wrap the end of the condenser foil about it, and unite the foil to the terminal member within the fold. Fruth's preferred manner of uniting the parts was to punch tongues, or the equivalent, from all of the overlying parts to the side opposite that to which the punching took place and clinch the parts thus caused to protrude from said opposite side upon the surface of the foil.

"Georgiev also conceived of using a separate member for terminal purposes, either to reinforce a terminal member integral with the foil or to serve solely as a terminal member by attachment to the end of the foil, as by rivets. In the specification Georgiev states that the terminal member, as shown in Fig. 3, 'may be, and preferably is, laterally reversed to afford a folded foil edge not shown.'"

The decision here hinges solely upon the interpretation to be given to the disclosure of appellant's application.

A drawing identified as Fig. 3, in the application of appellant, shows a square sheet of thin aluminum foil fastened along its right edge with aluminum rivets to a longer strip of heavier aluminum, called a tab, quite like a flag might be nailed to a flat pole.

Concerning this structure the application reads as follows: "In a preferred specific application of condenser shown in Fig. 4, the construction of cathode foil specifically shown in Fig. 3 is somewhat simpler than the anode foil previously described. The cathode foil 30, also of aluminum, is devoid of any integral tab but has directly riveted thereto as by aluminum rivets 31 a reinforce strip 32 of heavier stock which protrudes to form the elongated tab 33. The tab 33 in this instance is devoid of any binding post connection. The tab may be and preferably is laterally reversed to afford a folded foil edge (not shown)."

The board differed with the Primary Examiner in the interpretation it placed upon the sentence "The tab may be and preferably is laterally reversed to afford a folded foil edge (not shown)." The Primary Examiner held the application disclosed that by laterally reversing the tab, it was turned over from right to left, thus making a fold of foil embracing the tab. The board held that by laterally reversing, the tab could be turned from left to right and thus it would not be enfolded in the foil and could not support the counts.

The Primary Examiner based his reasoning, in part, upon the fact that in describing the construction of Figs. 1 and 2, the specification of appellant uses the same term "laterally reversed," and it is quite clear to us from an examination of the drawings that the tabs shown in Figs. 1 and 2 are turned over from right to left although the tab is an integral part of the foil. Drawings may be used as an aid in interpreting the specification. Bloodhart v. Levernier, 64 F.2d 367, 20 C.C.P.A., Patents, 917.

We agree with the contention of appellant that the natural reading of the specification as applied to Figs. 1 and 2 should not mean something else when applied to Fig. 3.

The only difference between the counts consists in a recitation in Count 2

of "a terminal member having a flattened portion." On this question we agree with the decision of the Primary Examiner which states: "The term 'flattened' is broad enough to include a terminal member which is flat throughout its length as shown by Georgiev in Fig. 3 or a terminal member which is only partially flat as shown by Fruth. There is no positive recitation in the claim as to the shape of the remaining portion of the terminal. Funk and Wagnalls New Standard Dictionary defines flat as 'Having a surface that is a horizontal plane, or nearly so; and flattened pa. Made flat.' The terminal of Georgiev may be thus properly described as having a flattened portion without regard to the shape of the rest of the terminal."

█ We think the specification of appellant, considered with the drawings, without doubt, clearly discloses the subject matter of the counts and the case of Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606, cited by the board, is not pertinent here.

Since it is clear from the record that appellant's disclosure supports the counts priority in this proceeding should have been awarded to him. The decision of the Board of Appeals is reversed.

Reversed.