**McGILL INCORPORATED, Appellee,**

v.

**JOHN ZINK COMPANY, Appellant.**

**McGILL INCORPORATED, Cross-Appellant,**

v.

**JOHN ZINK COMPANY, Cross-Appellee.**

Appeal Nos. 83–1198, 83–1217.

United States Court of Appeals, Federal Circuit.

April 27, 1984.

James D. Morton, Pittsburgh, Pa., argued, for appellant; Walther E. Wyss and Neil M. Rose, Chicago, Ill., on brief.

Jerry J. Dunlap, Oklahoma City, Okl., argued, for appellee; Gary Peterson, Oklahoma City, Okl., of counsel.

Before KASHIWA, Circuit Judge, COWEN, Senior Circuit Judge, and BENNETT, Circuit Judge.

KASHIWA, Circuit Judge.

This is a consolidated appeal from a judgment of the United States District Court for the Northern District of Oklahoma (No. 80–C–17–E), entered December 7, 1982, and from a post-trial order entered June 22, 1983. The judgment was in favor of appellee, owner of U.S. Patent No. 4,066,423 (the "423 patent"), and the district court awarded damages of $8,000,000. We affirm in part and reverse in part.

## The Invention

The patented invention relates to a process for recovering hydrocarbon vapors from an air-hydrocarbon mixture. It is a pollution-prevention process for recovering hydrocarbon vapors that have been vented from a storage tank. Appellee's invention is best described by its claim at issue:

2. A process for recovering hydrocarbon from an air-hydrocarbon mixture, comprising:

passing the air-hydrocarbon mixture through a solid adsorbent bed at slightly above atmospheric pressure, which bed is capable of selectively adsorbing the hydrocarbon components from the mixture to leave substantially hydrocarbon free air;

venting the substantially hydrocarbon free air to the atmosphere;

subjecting the hydrocarbon laden solid adsorbent bed to a near vacuum with a liquid ring vacuum pump to desorb the hydrocarbon components therefrom and produce a rich air-hydrocarbon vapor mixture containing a liquid from the liquid ring vacuum pump and a recovered liquid hydrocarbon;

· separating the liquid from the liquid ring vacuum pump and the recovered liquid hydrocarbon from the rich air-hydrocarbon vapor mixture;

absorbing substantially all of the hydrocarbon components from the rich air-hydrocarbon vapor mixture with *recovered liquid hydrocarbon absorbent* in an absorber operating with a sufficiently high L/V ratio to produce a constant composition absorber overhead gas and a recovered liquid hydrocarbon mixed with said absorbent;

recycling the absorber overhead gas from the absorption step to a second solid adsorbent bed, capable of selectively absorbing the hydrocarbon therein to leave a substantially free hydrocarbon recycle air;

venting the substantially free hydrocarbon recycle air to the atmosphere;

separating the liquid ring vacuum pump liquid from the recovered liquid hydrocarbon produced in the separation step;

cooling the liquid ring vacuum pump liquid; and

recycling said liquid ring vacuum pump liquid for use in the liquid ring vacuum pump.

[Emphasis added.]

*Fig. 1*

In operation, as best illustrated by Figure 1 of the patent, a source of light hydrocarbon contaminated air, such as that expelled from a gasoline storage tank, enters the lower portion of adsorbent vessel 12 via line 10. With valves 20 and 38 closed, hydrocarbon contaminated air is introduced at a pressure slightly above atmosphere. As the hydrocarbon contaminated air flows through the vessel, the adsorbent material packed in that vessel adsorbs substantially all of the hydrocarbon. Clean air is then expelled from the top of the vessel through line 22, check valve 24, line 26, and flame arrester 28. Prior to reaching the saturation point of the adsorbent material packed in adsorbent vessel 12, valves 18 and 40 are closed and valve 20 is opened to route the hydrocarbon contaminated air from line 10 through line 14 to absorbent vessel 16 for use during the regeneration of the adsorbent material in vessel 12.

To regenerate the adsorbent material of vessel 12, valve 38 is first opened and a vacuum produced by pump 48 in vessel 12 desorbs the hydrocarbon from the adsorbent material to produce a rich air-hydrocarbon mixture comprised of approximately 85 to 90% hydrocarbon by volume. Pump 48 is a liquid ring vacuum pump that is capable of producing a near vacuum in either adsorbent vessel during regeneration. As this rich air-hydrocarbon mixture comes in direct contact with the pumping liquid used by pump 48, cooling of the air-hydrocarbon mixture occurs and a portion of the heavier hydrocarbon components in pump 48 condenses. Effluent from pump 48 is then admitted to separator 52 via line 50. Separator 52 is a vessel operated slightly above atmospheric pressure and designed to separate the vapor and liquid components of the pump effluent and to further separate the immiscible liquid used by the liquid ring pump from any recovered liquid hydrocar-

bon[1] condensed by the inherent cooling action of the pump.

The liquid components of the pump effluent are separated by a weir 54 located at the bottom portion of separator 52 over which the lighter hydrocarbon liquid may flow. The heavier pumping liquid, typically water, trapped by the weir, is withdrawn from bottom of the separator 52 by line 56 connected between the bottom of the separator and cooler 58. Cooled pump liquid from cooler 58 is recycled for use in pump 48 through line 60 connected between cooler 58 and pump 48. The specification of the patent states that the "[r]ecovered liquid hydrocarbon overflowing the weir 54 is withdrawn from separator 52 through line 62 connected between the lower portion of separator 52 and line 74 for use as a liquid adsorbent [sic]." The vapor phase of the pump effluent is withdrawn from separator 52 through line 64 connected between the upper portion of the separator and the bottom portion of absorber 70.

Absorber 70 is a conventional absorber operating near ambient temperature and slightly above atmospheric pressure. In absorber 70, the vapor from separator 52 comes in direct countercurrent contact with recovered liquid hydrocarbon introduced at the upper portion of the absorber via line 72 and the hydrocarbon components in the vapor are substantially absorbed. Recovered liquid hydrocarbon is withdrawn from the bottom of the absorber and passed to pump 76 via line 74. A portion of the recovered liquid hydrocarbon is discharged from the pump through line 78, and another portion passes from line 78 through line 80 to cooler 82. This latter portion of the recovered liquid hydrocarbon is first cooled and then recycled to the top of absorber 70 via line 72 for use as the absorbent. Vapor from the top of absorber 70, comprising approximately 20 to 30% hydrocarbon by volume, passes through line 84 from the top of the absorber to line 10 for recycling through adsorbent vessels 12 and 16.

### Prosecution History

When appellee, McGill Incorporated ("McGill"), filed its application, it claimed (original claim 7) the use of a "liquid hydrocarbon absorbent" in absorber 70.[2] A dependent claim (original claim 8) called for:

A process, as recited in claim 7, wherein the liquid hydrocarbon *absorbent is recovered liquid hydrocarbon.* [Emphasis added.]

A further dependent claim (original claim 9)[3] recited the process of claim 8 plus

---

1. Since the terms "recovered liquid hydrocarbon" and "recovered hydrocarbon liquid" are used interchangeably in the patent and the parties do not dispute the fact that both terms define the same product, only the term "recovered liquid hydrocarbon" is used in this opinion.

2. Original claim 7 states:
  7. A process for recovering hydrocarbon from an air-hydrocarbon mixture, comprising:
  passing the air-hydrocarbon mixture through a solid adsorbent bed at slightly above atmospheric pressure, which bed is capable of selectively adsorbing the hydrocarbon components from the mixture to leave substantially hydrocarbon free air;
  venting the substantially hydrocarbon free air to the atmosphere;
  subjecting the hydrocarbon laden solid adsorbent bed to a near vacuum with a liquid ring vacuum pump to desorb the hydrocarbon components therefrom and produce a rich air-hydrocarbon vapor mixture containing a liquid from the liquid ring vacuum pump and a recovered liquid hydrocarbon;
  separating the liquid from the liquid ring vacuum pump and the recovered liquid hydrocarbon from the rich air-hydrocarbon vapor mixture;
  absorbing substantially all of the hydrocarbon components from the rich air-hydrocarbon vapor mixture with a *liquid hydrocarbon absorbent* to produce a constant composition absorber overhead gas and a recovered liquid hydrocarbon mixed with said absorbent;
  recycling the absorber overhead gas from the absorption step to a second solid adsorbent bed, capable of selectively absorbing the hydrocarbon therein to leave a substantially free hydrocarbon recycle air; and
  venting the substantially free hydrocarbon recycle air to the atmosphere. [Emphasis added.]

3. Original claim 9 states:
  9. A process, as recited in claim 8, further comprising:

limitations relating to certain details of the vacuum pump.

In his first Office Action, the examiner rejected all claims; claims 6–8 for obviousness and claims 1–12 under 35 U.S.C. § 112. The obviousness rejection related to the cooling function of pump 48. The exmainer further stated:

> Claims 9–12 contain allowable subject matter and would be allowed if claim 9 is written in independent form to include all the limitations now present through dependency and if the 112 rejection is overcome.

McGill amended claim 7 by inserting the phrase "in an absorber operating with a sufficiently high L/V ratio" in the fifth paragraph of claim 7.[4]

In his final Office Action, the examiner rejected claims 7 and 8, and objected to claim 9. Claims 7 and 8 were again rejected under 35 U.S.C. § 103 in relation to the cooling function. The examiner again stated:

> Claims 9–12 contain allowable subject matter and would be allowed when claim 9 is written in independent form to include all the limitations now present through dependency. Claims 10–12 depend from claim 9.

In response, McGill cancelled claims 7 and 8 and rewrote claim 9 in the independent form as new claim 14 which ultimately was allowed as the claim at issue, claim 2. In addition, McGill remarked:

> Claims 7–8 have been cancelled in view of the Examiner's rejections. Claim 9 has been rewritten in independent form as new claim 14 *including the limitations* which were present through dependency. Claim 10 has been corrected to depend upon the new claim 14. [Emphasis added.]

---

4. Amended claim 7, in pertinent parts, states:

separating the liquid ring vacuum pump liquid from the recovered liquid hydrocarbon produced in the separation step;

cooling the liquid ring vacuum pump liquid; and

recycling said liquid ring vacuum pump liquid for use in the liquid ring vacuum pump.

*District Court Proceeding*

At the close of all the evidence, appellant, John Zink Company ("Zink"), moved for directed verdict which was denied by the district court. A jury, after answering a set of special interrogatories pursuant to Fed.R.Civ.P. 49(b), returned a general verdict in favor of McGill. The jury found, *inter alia*, that McGill's invention would not have been obvious at the time of the invention and that the patent disclosed the best mode for practicing the invention. In addition, Zink was found to have infringed McGill's claim 2 and accordingly, McGill was awarded damages in the amount of $8,000,000. The district court entered a judgment in accordance with the jury verdict on December 7, 1982. In its order of June 22, 1983, the district court denied, *inter alia*, (1) Zink's motion for judgment notwithstanding the verdict ("JNOV") or in the alternative, motion for a new trial, and (2) McGill's motion to amend the judgment to include awards of increased damages, prejudgment interest, and attorneys' fees.

## OPINION

### I

In determining patent infringement, two inquiries are involved—(1) the scope of the claims and (2) whether the claimed invention has been infringed. *SSIH Equipment S.A. v. USITC*, 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.1983); *Autogiro Co. of America v. United States*, 384 F.2d 391, 401, 155 USPQ 697, 705 (Ct. Cl.1967). The first inquiry, a determination of the scope of the claims, is a question of law. *SSIH Equipment, supra.* If the language of the claims is undisputed, the district court could interpret or construe the undisputed claims as a matter of law.

---

absorbing substantially all of the hydrocarbon components from the rich air-hydrocarbon vapor mixture with a liquid hydrocarbon absorbent *in an absorber operating with a sufficiently high L/V ratio* to produce a constant composition absorber overhead gas and a recovered liquid hydrocarbon mixed with said absorbent. [Emphasis in original.]

*Singer Manufacturing Co. v. Cramer*, 192 U.S. 265, 275, 24 S.Ct. 291, 295, 48 L.Ed. 437 (1904); *see Super Products Corp. v. D P Way Corp.*, 546 F.2d 748, 756, 192 USPQ 417, 423 (7th Cir.1976); *cf. Chemical Construction Corp. v. Continental Engineering, Ltd.*, 407 F.2d 989, 991 (5th Cir.1969). If, however, the meaning of a term of art in the claims is disputed and extrinsic evidence is needed to explain the meaning, construction of the claims could be left to a jury. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753 (Fed.Cir.1984); *cf. Hong Kong Export Credit Insurance Corp. v. Dun & Bradstreet*, 414 F.Supp. 153, 157 (S.D.N.Y. 1975). In the latter instance, the jury cannot be directed to the disputed meaning for the term of art. *Cf. Butler v. Local Union 823, International Brotherhood of Teamsters*, 514 F.2d 442, 452 (8th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).

■ Where, as here, the overall question of infringement was answered by a jury and the losing party's motion for JNOV was denied, an appellate court's review of the denial is limited. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983). The appellate court is permitted to review only the sufficiency of the evidence, a question of law. *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 659, 55 S.Ct. 890, 892, 79 L.Ed. 1636 (1935). Such a review must be conducted within a set of guidelines which include: (1) a consideration of all the evidence, (2) in a light most favorable to the non-moving party, (3) drawing all reasonable inferences favorable to that party, (4) without determining the credibility of the witnesses, and (5) without substituting the court's choice for that of the jury between conflicting elements in the evidence. *Connell, supra.*

■ To obtain a reversal, appellant (the moving party below) must persuade us that either (1) the jury's findings were not supported by substantial evidence or (2) those findings cannot support the legal conclusions which necessarily were drawn by the jury in forming its verdict. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1513, 220 USPQ 929, 936 (Fed.Cir. 1984). If, however, there was substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party, then the denial of the JNOV was correct. *Envirotech, supra*, at 758–759.

■ In the instant case, the jury's finding of infringement was predicated on construction of claim 2. To obtain a reversal, Zink must demonstrate that no reasonable juror could have interpreted the claim in the fashion that supports the infringement finding, *e.g.*, in the fashion urged by McGill. Since the jury did not make express findings on claim construction, we must presume the existence of facts necessary to support the claim construction urged by McGill and determine if those facts were supported by substantial evidence. *Railroad Dynamics, supra.* Zink must convince us that there is no set of facts, consistent with McGill's interpretation, that was supported by substantial evidence.

### Claim Construction—Claim At Issue

The threshold requirement in claim construction is an examination of the claim at issue. In the instant case, McGill argues that the phrase "recovered liquid hydrocarbon absorbent" in the claim at issue means an undefined absorbent that is capable of recovering a substance called "recovered liquid hydrocarbon". Zink, on the other hand, argues that the phrase means that the recovered liquid hydrocarbon is being used as an absorbent. Thus, Zink's use of fresh gasoline in the absorption step would be an infringing use under McGill's interpretation and not an infringing use under Zink's.

To support its interpretation, McGill first contends that "recovered liquid hydrocarbon absorbent" and "recovered liquid hydrocarbon" cannot be the same substance due to the following passage in the fifth paragraph of claim 2: "a recovered liquid

hydrocarbon mixed with said absorbent". It seems to argue that mixing requires the presence of two different substances. Zink, however, counters with the contention that the overall language of claim 2 is consistent with its interpretation. In addition, Zink argues that the use of the words "said absorbent" merely refers to previously defined "recovered liquid hydrocarbon absorbent" and does not mean that the recovered liquid hydrocarbon is not being used as the absorbent.

Thus, the language of the claim at issue is in dispute,[5] and Zink contends that other tools of claim construction must be used to interpret the claim.

*Claim Construction—File History*

█ In construing or interpreting claims, a whole host of factors may be considered. *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 219 USPQ 1137 (Fed.Cir. 1983); *Autogiro,* 384 F.2d at 401, 155 USPQ at 705. One such factor is the prosecution history of the patent. The Court, in *Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 702, 15 L.Ed.2d 545 (1966), stated that "an invention is construed not only in light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office."

In the instant case, McGill contends that prosecution history estoppel is inapplicable since the claim at issue and in particular, the phrase "recovered liquid hydrocarbon absorbent," was not amended or distinguished in response to a prior art rejection, citing *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1362, 219 USPQ 473, 481 (Fed.Cir.1983). It argues that the amendments to the predecessor claims of the claim at issue were made only in response to a section 112 rejection for original claim 9 and in response to a rejection regarding the vacuum pump for original claim 7. Since there were neither amendments nor arguments in the file history

regarding "recovered liquid hydrocarbon absorbent," McGill contends that there was no surrender by amendment that could support a finding of estoppel, citing *Caterpillar Tractor Co. v. Berco, S.P.A.,* 714 F.2d 1110, 1115, 219 USPQ 185, 187–88 (Fed.Cir. 1983). In addition, McGill argues that whether or not the absorbent was "recovered" was not a pivotal issue during prosecution because the examiner twice rejected both claims 7 and 8 on the basis of the same prior art without differentiating the only difference between these claims—"recovered." If this issue had been pivotal, McGill contends, the examiner would have allowed claim 8 and rejected claim 7. McGill concludes that the phrase "recovered liquid hydrocarbon absorbent" means an undefined absorbent that is capable of recovering a substance called "recovered liquid hydrocarbon." Zink's use of fresh gasoline as the absorbent in the absorption step is, therefore, an infringing use. We disagree.

█ Prosecution history may be used not only in an estoppel context but also as a claim construction tool. *Fromson, supra.* Where, as here, an unambiguous limitation such as the one that was present in original claim 8 was voluntarily added to a subsequent claim during prosecution, it may be used to construe the claim. In the instant case, the examiner twice remarked that original claim 9 would be allowed if it were rewritten in an independent form and included *all the limitations* present through dependency. The phrase "recovered liquid hydrocarbon absorbent" in original claim 8 was clearly a limitation, a limitation having the meaning: recovered liquid hydrocarbon being used as an absorbent. Since this condition for allowance was clear and the limitation of original claim 8 was clear on its face, the appearance of the phrase in new claim 14 was an indication, as interpreted by Zink, that the

*Cf. Seitz v. Brewers' Refrigerating Mach. Co.,* 141 U.S. 510, 517, 12 S.Ct. 46, 48, 35 L.Ed. 837 (1891); *Motor Carriers Council of St. Louis, Inc. v. Local Union No. 600,* 486 F.2d 650, 653 (8th Cir.1973).

limitation of original claim 8 had been incorporated into the new claim.

*Claim Construction—Specification*

■ Another factor in claim construction is the use of the patent specification. *McClain v. Ortmayer,* 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800 (1891); *Fromson,* 720 F.2d at 1569–70, 219 USPQ at 1140. Words which were defined in the specification must be given the same meaning when used in a claim. *General Electric Co. v. United States,* 572 F.2d 745, 753, 198 USPQ 65, 71 (Ct.Cl.1978). In *Autogiro,* 348 F.2d at 397–98, 155 USPQ at 702–3, the Court of Claims stated:

> In serving its statutory purpose, the specification aids in ascertaining the scope and meaning of the language employed in the claims inasmuch as words must be used in the same way in both the claims and the specification. U.S.Pat. Off. Rule 75(d). The use of the specification as a concordance for the claims is accepted by almost every court, and is a basic concept of patent law. [Footnotes omitted.]

In the specification of the patent at issue, the phrase "recovered liquid hydrocarbon absorbent" is not defined. However, the phrase "recovered liquid hydrocarbon" and the word "absorbent" are defined. For example, the specification states that the "[r]ecovered liquid hydrocarbon overflowing the weir 54 is withdrawn from separator 52 through line 62 connected between the lower portion of separator 52 and line 74 for use as a liquid adsorbent [sic]." The specification then describes the direct countercurrent contact of the vapor hydrocarbon component and the recovered liquid hydrocarbon "introduced in the upper portion of the absorber via line 72." In addition, the specification discloses that a portion of the recovered liquid hydrocarbon discharged from absorber 70 is first cooled by cooler 82 and then pumped via line 72 to

the top of absorber 70 "for use as absorbent." Thus, the specification discloses a process in which the absorbent is created internally within the system and not a process that utilizes an external liquid as its absorbent.

It is clear from the specification that the recovered liquid hydrocarbon functions as the absorbent in absorber 70. Contrary to McGill's construction, the phrase "recovered liquid hydrocarbon absorbent" does not mean an undefined absorbent that is capable of recovering a substance called "recovered liquid hydrocarbon." In addition, all of the drawings of the patent show only the use of internally-created recovered liquid hydrocarbon as the absorbent. *Dominion Magnesium Ltd. v. United States,* 320 F.2d 388, 394, 138 USPQ 306, 310 (Ct. Cl.1963). Thus, the phrase "recovered liquid hydrocarbon absorbent" in claim 2, as urged by Zink, has the meaning that was defined in the specification which is internally-created recovered liquid hydrocarbon being used as an absorbent.

*Claim Construction—Other Claims*

■ A third factor in claim construction is the use of other claims in the patent to determine the scope of the claim at issue. *Fromson,* 720 F.2d at 1570, 219 USPQ at 1140–41; *General Electric,* 572 F.2d at 751, 198 USPQ at 70.

In dependent claim 3,[6] the steps of cooling the recovered liquid hydrocarbon discharged by absorber 70 and the recycling of the cooled liquid to the absorber are claimed. The cooled recovered liquid hydrocarbon are recycled to absorber 70 "for use as absorbent in the absorption step." McGill contends that if independent claim 2 is interpreted to include an absorption step carried out with "recovered liquid hydrocarbon," then the second step of dependent claim 3 would be redundant. As such, it would be an improper reading of a limita-

---

**6.** Claim 3 states:
   3. A process, as recited in claim 2, the further steps comprising:
   cooling a portion of the recovered liquid by hydrocarbon; and

recycling the cooled recovered liquid hydrocarbon for use as absorbent in the absorption step.

tion explicitly set forth in a dependent claim into an independent claim, citing *Environmental Designs, Ltd. v. Union Oil Co. of California,* 713 F.2d 693, 699, 218 USPQ 865, 871 (Fed.Cir.1983). We disagree.

McGill is misconstruing claims 2 and 3. It seems to be reading claim 2 to mean that something other than internally-created recovered liquid hydrocarbon was used as the absorbent in the initial or first absorption step. Then, in light of claim 3, only the *cooled* recovered liquid hydrocarbon is being recycled as the absorbent. Since the specification and drawings fail to show the use of anything but the internally-created recovered liquid hydrocarbon as the absorbent, Zink contends that this is a tortured reading. It interprets claim 3 to mean that the "recovered liquid hydrocarbon" of claim 2, already being used as the absorbent, is further cooled and recycled for the same use.

*Claim Construction—Expert Testimony*

■ In addition to tools of claim construction such as file history, patent specification, and other claims in the patent, testimony by expert witnesses may be used to construe claims. *See Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 770, 204 USPQ 785, 791 (5th Cir.), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980). Such testimony is evidence of construction of the claims as they would be construed by those skilled in the art. *Fromson,* 720 F.2d at 1571, 219 USPQ at 1142. In this regard, experts for both sides testified as to their interpretation of the phrase "recovered liquid hydrocarbon absorbent."

McGill contends that the testimony of two of its experts, a co-inventor of the '423 patent and its patent law expert, supports its interpretation of claim 2. The co-inventor stated that recovered liquid hydrocarbon was not the same thing as recovered liquid hydrocarbon absorbent. The patent law expert interpreted the phrase "recovered liquid hydrocarbon absorbent" to mean an undefined absorbent that is capable of recovery a substance called "recov-

ered liquid hydrocarbon." McGill also contends that U.S. Patent No. 3,770,622, cited in the '423 patent, confirms the interpretation it urges.

Zink, however, disputes the interpretation of McGill's experts. Its own patent law expert equated recovered liquid hydrocarbon with recovered liquid hydrocarbon absorbent. Zink also argues that even a Dr. Garwin, another one of McGill's experts, testified that the absorbent and the recovered liquid hydrocarbon were the same substance. In particular, Zink contends that its cross-examination of McGill's patent law expert raised questions regarding that expert's interpretation of claim 2.

*Claim Construction—Conclusion*

After considering the record taken as a whole, including the experts' testimony, *Hayes v. Department of the Navy,* 727 F.2d 1535, 1538 (Fed.Cir.1984); *see Control Components, supra; cf. Moraine Products v. ICI America, Inc.,* 538 F.2d 134, 146, 191 USPQ 65, 75 (7th Cir.), *cert. denied,* 429 U.S. 941, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976), we are convinced that there is no set of facts, consistent with McGill's interpretation, that is supported by substantial evidence. Thus, McGill's interpretation of claim 2, a legal conclusion implied from the jury's finding of infringement, cannot be upheld, premised as it must be on facts which are not supported by substantial evidence.

In regard to possible infringement under the doctrine of equivalents, we are similarly convinced that there is no set of facts, consistent with McGill's interpretation, that is supported by substantial evidence. As discussed above, there is no substantial evidence to support McGill's interpretation that its process uses an absorbent that is not the internally-created, recovered liquid hydrocarbon. In light of the fact that Zink's process utilizes an absorbent that is composed of an external fluid, McGill's and Zink's processes are not equivalents in that different *ways* are used to perform the desired function. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608–9 (1950); 220 USPQ 481,

488–89 (Fed.Cir.1983). Thus, any finding regarding equivalence is not supported by substantial evidence.

McGill's claim 2 is limited, instead, to an absorbent which consisted of internally-created recovered liquid hydrocarbon. It is undisputed that fresh gasoline, as used by Zink to recover liquid hydrocarbon, is not "recovered liquid hydrocarbon" as that term is used in the '423 patent. As such, Zink's use of fresh gasoline as the absorbent is noninfringing. Accordingly, the district court should have granted Zink's motion for JNOV in relation to infringement and the district court's denial is reversed.

## II

In addition to the argument that claim 2 was misconstrued as to its scope in regard to the infringement issue, Zink next argues that the district court committed reversible error when it failed to submit to the jury the tripartite factual inquiries as mandated by *Graham*, 383 U.S. at 17, 86 S.Ct. at 693–94. Zink contends that these factual inquiries should have been submitted as special interrogatories to the jury. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1361, 220 USPQ 763, 771–72 (Fed.Cir.1984); *cf. Railroad Dynamics*, 727 F.2d at 1515–16, 220 USPQ at 938;

The interrogatories which were proposed by Zink are not a part of the record of the district court. *Maryland Casualty Co. v. Jones*, 279 U.S. 792, 796, 49 S.Ct. 484, 485, 73 L.Ed. 960 (1929); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d

1380, 1388, 219 USPQ 569, 575 (Fed.Cir. 1983). As admitted by Zink, these interrogatories were submitted to the district judge during a special Sunday session and were never made a part of the record. In light of these facts, we need not and do not reach the issue whether the district court improperly failed to submit *Graham*-type factual interrogatories to the jury.[7]

## III

Zink further argues that McGill's patent is invalid for failure to disclose the best mode of operation. It contends that a feature known as "purge air" was incorporated into the first commercial unit of McGill's invention and has been used in every unit sold since that time. The failure to disclose this feature in the patent specification violated the best mode requirement,[8] and therefore invalidates the patent.

■ After hearing testimony, including those of the two inventors, the jury found[9] that Zink failed to prove that the best mode was not disclosed. Since the best mode issue is a question of fact, *see Union Carbide Corp. v. Borg-Warner Corp.*, 550 F.2d 355, 360, 193 USPQ 1, 5–6 (6th Cir.1977) (Miller, J., sitting by designation) (district court's finding on best mode reviewed under the clearly erroneous standard), a jury's determination must be upheld unless Zink can convince us that it was not supported by substantial evidence. In the instant case, it has failed to meet its burden.

### Conclusion

■ Since the issues discussed above are dispositive of this case, we need not

7. Zink's underlying argument regarding obviousness is based on a construction of McGill's claim 2 that includes gasoline as "recovered liquid hydrocarbon absorbent." Since such a construction of claim 2 has been reversed, we need not and do not reach the substantive obviousness issue.

8. The best mode requirement is stated in the first paragraph of 35 U.S.C. § 112:

§ 112. Specification
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which

it pertain, or with which it is most nearly connected, to make and use the same, and shall set forth the *best mode* contemplated by the inventor of carrying out his invention. [Emphasis added.]

9. The jury found for McGill in answering special interrogatory No. 7, which states:

7. Do you find that the Defendant [Zink] has proved by the required degree of proof that James McGill and William Scott [Inventors] failed to disclose in their patent application the best mode known to either of them at the time for practicing their invention?
Answer Yes or No     No

and do not reach other issues in the appeal and cross-appeal. Accordingly, that portion of the judgment regarding the validity of the '423 patent is affirmed. That portion of the judgment regarding infringement is reversed, and the damage award is reversed. Each party shall bear its own costs.

AFFIRMED–IN–PART. REVERSED–IN–PART.