**BAKER OIL TOOLS, INC., Plaintiff,**

v.

**TRW, INC., Defendant.**

**No. 84–C–227–E.**

United States District Court, N.D. Oklahoma.

Feb. 4, 1987.

Joel L. Wohlgemuth, Norman, Wohlgemuth & Thompson, Tulsa, Okl., William C.

Norvell, Jr., Norvell & Assoc., Houston, Tex., Robert W. Turner, Hubbard, Thurman, Turner & Tucker, Dallas, Tex., for plaintiff.

Fred C. Cornish, Cornish & Renbarger, Tulsa, Okl., Daniel Blackhurst, TRW, Inc., Hal D. Cooper, Barry L. Springel, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ELLISON, District Judge.

This case was tried before the Court sitting without a jury from April 9 through April 12, 1985. The Court, having heard the testimony of the witnesses, having examined the documentary evidence introduced during the course of the trial and having considered the briefs and arguments of the parties and being fully advised, enters these findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff commenced this patent infringement action by charging Defendant with infringement of United States Patent number 3,972,352, hereafter referred to as the '352 patent. The '352 patent issued on August 3, 1976 to FMC Corporation as the original assignee of Phillip R. Bunnelle, the inventor. The patent was designated a Discharge Element for a Liquid–Gas Separator Unit.

2. Baker Oil Tools, Inc., Plaintiff herein, is a California corporation and the present owner of the '352 patent. This ownership is derived by assignments from FMC Corporation to Plaintiff's subsidiary Kobe, Inc. and from Kobe to Plaintiff. By reason of such ownership Plaintiff is entitled to maintain this action. Plaintiff manufactures and sells oil-separators using the invention of the '352 patent. Such manufacture and sale is accomplished by Plaintiff through its Baker Lift Systems Division located in Oklahoma City, Oklahoma.

3. The Defendant TRW Inc. is an Ohio corporation which sells oil-gas separators

that uses a discharge element which Plaintiff charges is infringing the '352 patent. Defendant competes with Plaintiff through its Reda Pump Division in Bartlesville, Oklahoma.

4. Defendant markets its separator as the KGS–400 separator. These separators have been manufactured and sold by the Defendant in the Northern District of Oklahoma since the issuance of the '352 patent.

5. The Court has jurisdiction over the parties and the subject matter of this cause and proper venue does lie in this Court. The liquid gas separators sold by Plaintiff and Defendant are used downhole in oil wells to separate gas from crude oil before the oil enters the downhole pump. If gas is present in the oil flowing into the pump, the gas tends to restrict the oil flow through the pump and reduce the pump's efficiency. In the event excessive quantities of gas are present in the oil, gas lock may occur which completely restricts oil flow through the pump. The purpose of the liquid gas separator is to reduce the possibility of gas lock and permit the pump to operate efficiently.

6. On November 10, 1972 the inventor of the '352 pump filed a patent application in the United States Patent and Trademark Office, hereafter "PTO", entitled "Liquid–Gas Separator Unit." The application was assigned serial number 305,645 (hereafter "the parent application"). This parent application contained the same drawings as the '352 patent and originally contained 69 claims. The application was directed to a centrifugal type of liquid-gas separator.

7. The examiner, in this first PTO action, held that all 69 claims of the application "are subject to restriction or election requirement." He found that the parent application contained three different and distinct inventions: (1) claims 1–27 and 31–44 were directed to a liquid-gas separator; (2) claims 28–30 and 45–63 were directed to a discharge element; and (3) claims 64–69 were directed to an inlet conduit. The PTO required the inventor to decide which of these inventions he wanted to prosecute in his application. He elected to prosecute only claims 1–27 and 31–44 which he de-

scribed as "the separator". The parent application issued as United States Patent No. 3,887,342 on June 3, 1975.

8. On the 5th day of July, 1974 the inventor filed a second patent application prosecuting claims 28–30 and 45–63 of the patent application (hereinafter "the divisional application"). These claims had been restricted out of the parent application because they pertained not to a liquid-gas separator but to a different and distinct invention, a discharge element.

9. The examiner in this PTO action allowed claims 28–30 but rejected claims 45–63 as unpatentable on the basis that they were anticipated by cited prior art. Among these rejected claims was claim 57 which, after being twice amended, ultimately issued as claim 15 of the '352 patent. This claim is the only independent claim which Plaintiff alleges that Defendant infringed.

10. The inventor's response to the first action was accomplished May 5, 1975 when he amended certain claims including claim 57. The examiner in this second PTO action again allowed claims 28–30 but again rejected as unpatentable claims 45–63 on the grounds that they were obvious in view of cited prior art. The examiner's rejection in the second office action was made "Final."

11. The inventor's counsel met with the examiner on December 1, 1975 to discuss the final rejection. Following that meeting, on December 3, 1975 the inventor filed an Amendment, in which he amended the specification and amended certain claims including claim 57. Claim 57 was renumbered as claim 71. The inventor urged that by virtue of the amendments all claims were now patentable over the prior arts cited. The examiner held that the amended claims were now allowable and on August 3, 1976 the divisional application issued as the '352 patent.

12. In a centrifugal liquid-gas separator, to which the parent application was directed, centrifugal force directs oil, the heavier liquid, to the outside of the separator while gas, being lighter, is directed to the inside. In this manner the two are separated. After separation it is necessary

for the two substances to cross over since the liquid must go from the outside to the inside so it can enter the pump, and the gas must go from the inside to the outside so it may be ejected into the well. Plaintiff's '352 patent is directed solely to the discharge element at the upper end of the separator which accomplishes this crossover.

13. Claim 57 as originally filed called for a "passage means ... adapted to convey gas through the discharge element" and a "passageway means ... adapted to convey liquid through the discharge element." This claim was rejected by the examiner in the first PTO action because it was fully anticipated by United States Patent No. 1,348,390, issued August 3, 1920 to E.L. Claus (hereinafter "Claus" patent) and therefore unpatentable.

14. In response to the first action, the inventor amended claim 57 and urged that because of the amendment claim 57 was now patentable over the cited prior art. Claim 57 as amended called for a "passage means through said wall ... adapted to convey gas through the wall of the discharge element" and a "passageway means through said wall ... adapted to convey liquid through the wall of the discharge element." The only material change made by the amendment was the addition that the gas passage means and the liquid passage means went "through" the wall of the discharge element.

15. The examiner in the second PTO action again rejected claim 57 because it was obvious in view of Claus and therefore unpatentable. The examiner made the rejection "Final" leaving the inventor with three options: to abandon the application, to appeal the examiner's rejection to the Board of Appeals, or to continue to prosecute the application by narrowing the claim to overcome the prior art. The inventor opted to narrow claim 57.

16. Following conference between counsel for the inventor and the examiner, an amendment was filed in response to the second action which amended former claim 57 as rewritten claim 71. The examiner held that the twice amended claim was now allowable and on August 3, 1976 it was issued as claim 15 of the '352 patent.

17. As a result of the interview with the examiner the inventor added the phrase "terminating in" and the term "second aperture" to what became claim 15 of the '352 patent. When the amendment was filed, specification was also amended to define the second aperture. The specification was not amended to explain the phrase "terminating in." The meaning of that phrase is explained in the specification as filed.

18. The specification of the '352 patent requires that liquid passage 100 must be capable of performing three specific functions. Passage 100 must carry the liquid upward from the inlet 100b to the second aperture 100a. Passage 100 must convert hydrokinetic energy to hydrostatic energy. Thus, the passageways 100 "act as diffuser passages wherein liquid velocity head is recovered." The inventor designed the liquid passageways on the outside of the body as "diffuser vanes" to recover velocity head from the liquid before directing it from the outside to the inside. This function was desired to use less electrical energy for operation of the pump. Finally, passageway 100 must stabilize the liquid so that it "is less likely that dissolved gas will be released from the liquid" after the liquid leaves the passageway 100.

19. Both sides have submitted expert testimony with respect to claim construction and obviousness. The Court must decide what weight, if any, should be given to each expert's testimony. The factors that a Court may consider in determining the level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) repetity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field. Factors 1, 2, 5 and 6 are relevant to this action and are considered as follows:

Factor 1: The inventor Bunnelle has a Bachelor of Science in Mechanical Engi-

neering and a Master of Science in Agricultural Engineering;

Factor 2: The type of problems confronted by the inventor involved fluid mechanics. Bunnelle had no prior experience in liquid-gas separators when assigned by FMC to design one. To be skilled in the art a person need not have specific prior experience with liquid-gas separators.

Factor 5: The Court finds that the technology was sophisticated which required the inventor to educate FMC's patent attorney about the area.

Factor 6: In addition to the inventor Bunnelle, the active workers were Bynum, Brookbank and Kobylinski. Bynum's educational background included a Bachelor of Science in Mechanical Engineering and a specialization in fluid mechanics. Brookbank who was TRW's first designer of its device has a Bachelor of Science in Mechanical Engineering and advanced engineering degrees coupled with experience in fluid mechanics. TRW's second designer, Kobylinski, has a Bachelor of Science in Mechanical Engineering and experience in fluid mechanics. The Court finds that a person skilled in the art must at a minimum have an undergraduate engineering degree and college courses or practical experience in the field of fluid mechanics.

20. Expert witness White stated that he was not a person skilled in the art, did not have an engineering degree and did not take courses in fluid mechanics, nor did he have practical experience with fluid mechanics. Expert witness Boyd did have an engineering degree and had taught engineering courses in fluid mechanics and had practical experience in principles of fluid mechanics. Expert witness Banner has an engineering degree and some experience with fluid mechanics resulting from his service as General Patent Counsel for Borg Warner Corporation. Banner acknowledged that he had relied upon Boyd's greater technical expertise and testimony in formulating his opinion on the construction of claim 15. Bunnelle, Bynum, Brookbank, Kobylinski and Boyd are persons skilled in the art to which the invention of the '352 patent pertains. The Court finds that the testimony of the expert witnesses, Boyd and Banner, is the most credible.

21. Defendant TRW was granted United States Patent No. 4,481,020 ('020 patent) for a Liquid–Gas Separator Apparatus which embodies the accused discharge head at its upper end. A review of the '020 patent shows that the accused device operates as follows: The separated liquid and gas enter "discharge head 14" of "separator apparatus 10". The separated liquid is first conveyed upward into "annular flow channel 82" (an annulus) and is then conveyed through "upwardly angled passageways 86" (which go from the outside to the inside) until it reaches "upper chamber 84" which connects to the pump inlet. The separated gas is first conveyed to "lower chamber 88" and then conveyed through upwardly angled "gas vents 90" (which go from the inside to the outside) for ejection into the well casing.

22. Plaintiff charges Defendant with infringement of claims 15, 20 and 21 of patent '352. However the Court need only consider independent claim 15 in depth because noninfringement of claim 15 precludes infringement of the dependent claims 20 and 21. Below, claim 15 is reproduced with each element separately set forth in a lettered paragraph for the purpose of analysis and with reference numerals from the '352 patent drawings inserted:

A discharge element [30] for use at the upper end of a liquid-gas separation chamber [12a] wherein gas is separated from a liquid-gas mixture prior to discharge along separate paths of the liquid and gas components of the liquid-gas mixture through the discharge element, the discharge element comprising

(a) an annular body [70]

(b) having an axial wall [no specific numeral but see 86]

(c) and a gas passage defining a first aperture [96] through said wall from the inside to the outside for conveying gas outwardly through said discharge element wall

(d) said body also having a liquid passageway [100] terminating in

(e) a second aperture [100a] through said wall for conveying liquid inwardly through the wall of said discharge element from outside of said body,

(f) said gas passage [96] and said liquid passageway [100] each leading upwardly from a lower portion of the body

(g) with said gas passage leading to ports [96a] located outside and above the lower end of said body.

In order for the accused device to infringe claim 15 each element, (a) through (g), must be found in it.

23. TRW's accused device does not infringe claim 15 because element (d), a liquid passageway, is absent in the accused device. Element (e) contained in the accused device constitutes a second aperture because it employs a drilled hole which goes from the outside to the inside for, to quote the language of claim 15, "conveying liquid inwardly through the wall of said discharge element from outside of said body." The presence of such structure in the accused device does not establish infringement in the clear absence of a liquid passageway.

24. The Defendant's discharge head does not recover hydrostatic head and does not stabilize gas within the liquid, two functional requirements of the liquid passageway described in the '352 patent. The Defendant redesigned the discharge head prior to sale in order to eliminate the possibility of infringement. The early prototypes of the discharge heads had "vanes" which did recover hydrostatic head and made it less likely that dissolved gas would be released from the liquid. Upon the advice of its patent counsel, Defendant removed these vanes from the prototype. The accused device does not have a structure which recovers hydrostatic head nor does it have a structure which makes it less likely that dissolved gas will be released from the liquid.

25. An additional basis for determining that the Defendant's discharge head does not infringe claims 15, 20 and/or 21 of Plaintiff's patent is the Pyle patent. Howard C. Pyle filed a patent application in 1939 for a centrifugal liquid-gas separator to be used downhole in an oil well. It was issued on February 23, 1943 as United States Patent No. 2,311,963 ("Pyle" patent). Plaintiff's '352 patent states that it is an improvement over prior art devices including Pyle. Although the patent does not specifically use the terms "discharge element" or "discharge head," the Pyle device contains structure at the upper end of the separator which conveys the separated liquid from the outside to the inside and conveys the separated gas from the inside to the outside.

26. Pyle and the TRW accused device are virtually identical. Pyle shows the separated liquid on the outside to be conveyed upward into the "annular space 41." This is identical to the TRW device where the separated liquid on the outside is conveyed upward into the "annular flow channel 82." Both Pyle and TRW start the upward flow of liquid by conveying it through an annular area rather than using the Bunnelle multiple liquid passageways 100. The liquid flow path of Pyle and of the accused device are structurally and functionally identical. In Pyle, the upward flowing liquid is conveyed from the outside to the inside through upwardly angled "ducts 39 and 40" to the inlet of the pump. This is no different from TRW's device where upward flowing liquid is conveyed from the outside to the inside through "upwardly angled passageways 86" to the inlet of the pump. Both Pyle and TRW start the upward flow of gas in the same manner. Pyle has the separated gas on the inside being conveyed upward into the "inner annular space 83". TRW has the separated gas on the inside conveyed upward into "lower chamber 88." The gas flow path of Pyle is horizontal and that of TRW is angled upwardly. Pyle has the upward flowing gas being conveyed from the inside to the outside for ejection into the well through horizontal "port 85." TRW has the upward flowing gas being conveyed from the inside to the outside for ejection into the well through upwardly angled "gas vents 90."

27. This structural difference between Pyle and TRW is only of mechanical choice and dictated by considerations of fluid mechanics which were well known to persons skilled in the art.

28. The accused device is designed in accordance with the prior art and uses only structure, function and engineering principles which are in the public domain.

29. The Court has previously determined the level of ordinary skill in the art to be that of a person having, at a minimum, an undergraduate degree in engineering and courses or practical experience in fluid mechanics. At the time of the invention of the '352 patent, persons having ordinary skill in the art were Bynum, Bunnelle and Boyd.

30. Bunnelle testified that it was necessary to test his theories of how the oil-gas separator and the discharge element should be designed. Bynum testified as to the difficulty involved in designing such a structure. This combined testimony is compelling evidence that persons skilled in the art at the time the invention was made did not find the claimed combination to be obvious.

31. Defendant has failed to meet the burden of establishing the invalidity of claim 15.

32. These Findings of Fact, insofar as they may be deemed to be Conclusions of Law, are hereby incorporated into this Court's Conclusions of Law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1338(a). The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 authorizes declaratory judgment in these proceedings since there exists an actual controversy between Plaintiff and Defendant.

2. In addressing the issue of infringement the Court must first determine the scope of the claims, and then determine if the claimed invention has been infringed. *McGill, Inc. v. John Zink Co.,* 736 F.2d 666, 671 (Fed.Cir.1984).

3. Baker contends that the term "liquid passageway" refers to the entire liquid flow path from the point where the liquid enters the lower outside of the discharge element body until the liquid exits into the liquid receiving chamber on the upper inside of the body and that the second aperture is a part of the liquid passageway at its upper end. Under this contention both the liquid passageway and the second aperture must go through the wall from the outside to the inside of the element body. It is TRW's contention that the liquid passageway begins at the point where the liquid enters the lower outside of the discharge element body and leads upward until it terminates at a point on the outside of the body, whereupon the second aperture begins at that point and goes through the wall from the outside to the inside.

4. In construing claim 15 the Court must consider the prosecution history of the '352 patent. *McGill Inc. v. John Zink Co.,* 736 F.2d 666, 673 (Fed.Cir.1984). Substantial changes were made to amended claim 57 in order to overcome the examiner's prior art rejection based on Claus. Such changes bring into operation the doctrine of prosecution history estoppel. *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1361 (Fed.Cir.1983).

5. 35 U.S.C. § 112(6) authorizes the broad means-plus-function language which was used in both the original and amended claim 57 to describe the gas passage and the liquid passageway. Bunnell cancelled amended claim 57, withdrew the broad means-plus-function language and granted the examiner's demand that narrower language be used in order to obtain the allowance of rewritten claim 71. Baker cannot now argue for a claim construction which would resurrect the means-plus-function approach in construing claim 15. Such construction is prohibited by the doctrine of prosecution history estoppel.

6. Another factor which the Court must address in claim construction is the patent specification. *McGill Inc. v. John Zink Co.,* 736 F.2d at 674. "Words which were defined in the specification must be given the same meaning when used in a claim."

*Id.* "Drawings may be used as an aid in interpreting the specification." *Georgiev v. Fruth,* 102 F.2d 222, 223 (C.C.P.A.1939).

7. The specification at column 5, lines 3–16 state that the liquid passageway 100, regardless of its specific configuration, is on the "exterior" of the body 70 and leads upward *"from* an inlet 100b ... *to* a respective ... aperture 100a." This use of the words "from" and "to" expressly define the outer limits of the liquid passageway 100. These words evidence that the liquid passageway 100 ends at the point where the second aperture 100a begins.

8. The specification defines the liquid passageway 100 as a structure only on the outside of the body 70 which leads upward from an inlet 100b to a second aperture 100a and in so doing performs the functions described in finding of fact no. 18. The second aperture 100a is defined by the specification and claim as the structure which conveys the liquid through the wall from the outside to the inside. "[T]estimony by expert witnesses may be used to construe claims." *McGill Inc. v. John Zink Co., supra,* 736 F.2d at 675. The expert must first be shown to be a person skilled in the art to which the invention pertains before his testimony should be given any weight. *Id.* Such a requirement is imposed because the specification and claims are addressed to such persons.

9. In determining what weight, if any, should be given to the testimony of an expert witness, the Court must make a factual finding as to the qualifications one must possess to be skilled in the art. "Factors that may be considered in determining level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Orthopedic Equipment Co., Inc. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382 (Fed. Cir.1983). "Not all such factors may be present in every case, and one or more of these or other factors may predominate in a particular case." *Environmental Designs, Ltd. v. Union Oil Company of California,* 713 F.2d 693, 696–97 (Fed.Cir.1983). Those factors which are relevant to this action, (1), (2), (5) and (6), are addressed in finding no. 19.

10. TRW's construction of claim 15 is supported by the prosecution history, drawings, specification and the most credible testimony of experts. Claim 15 of patent '352 is therefore construed as requiring a liquid passageway 100 which performs certain functions, leads upward only on the exterior of the body 70 from an inlet 100b and terminates at a point where the second aperture 100a begins, and that the second aperture, and not the liquid passageway, goes through the wall from the outside of the element body to the inside. In arriving at this construction, the Court has been aware of the principle that "claims should be construed, if possible, as to sustain their validity." *ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1577 (Fed.Cir.1984).

11. TRW acknowledges that when claim 15 is construed in this manner such claim is valid although not infringed by the TRW device.

12. The Court having construed claim 15 in the manner urged by TRW concludes that TRW has failed to sustain its burden of proof on its allegation that claims 15, 20 and/or 21 are invalid under 35 U.S.C. § 103.

13. These Conclusions of Law, insofar as they may be deemed to be Findings of Fact, are hereby incorporated into this Court's Findings of Fact.

The parties are directed to file an agreed form of judgment consistent with this Order within twenty (20) days of this date.

It is so Ordered.