**Paul BUSHELL, Plaintiff,**

v.

**WACKENHUT INTERNATIONAL, INC., et al., Defendants.**

**No. 87–1779–CIV.**

United States District Court,
S.D. Florida.

Feb. 26, 1990.

David J. White, Miami, for plaintiff.

William Reese, Andrew J. Anthony, Miami, for Wackenhut.

Philip D. Parrish, Miami, for Ins. Co. of N. America.

## MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT

SCOTT, District Judge.

This is a diversity action brought by Paul Bushell ("Bushell") against his employer, Wackenhut International, Inc. ("Wackenhut"), and his employer's insurance carrier, Insurance Company of North America ("INA"). Pending before the Court are various motions for summary judgment filed by Bushell and Wackenhut.

### I. Background

Bushell is a citizen and resident of the United Kingdom. Wackenhut is a Florida corporation with its principal place of business in Coral Gables, Florida. In the beginning of 1983, Bushell entered into an employment agreement with Wackenhut.[1] Under the agreement, Bushell was to serve as an "Airport Fireman/Driver" at various airports within the Kingdom of Saudi Arabia. At that time, Wackenhut had a contract with Saudi Arabia to provide fire services at thirteen airports throughout Saudi Arabia.

The employment agreement between Bushell and Wackenhut provides for various employee benefits, including compensation for disability due to an accident while working on the job. Pursuant to paragraph 7 of the agreement, "COMPENSATION FOR DISABILITY OR DEATH DUE TO ACCIDENT", Wackenhut was obligated to "provide insurance for securing payment of benefits in accordance with the provisions of workmen's compensation or equivalent insurance, if applicable."

The employment agreement also contains a choice of law clause. Paragraph 24 of the agreement, "EFFECTIVE DATE AND GOVERNING LAW", provides that the agreement shall be construed in accordance with the laws of Saudi Arabia and Florida. The agreement does not contain a provision as to whose law shall control in the event a conflict should arise between the law of Saudi Arabia and Florida.

As the employer of workers performing services within Saudi Arabia, Wackenhut was required to participate in Saudi Arabia's Social Insurance Law. Saudi's Social Insurance Law provides a social insurance plan to cover those who work for wages primarily within Saudi Arabia. Among other benefits, the Social Insurance Law provides for compensation when an employee suffers an industrial injury. Compensation includes medical care and monthly benefits. In the case of permanent disability, the Social Insurance Law entitles the worker to 75 percent of his average monthly wages or an equivalent lump sum payment. Participation of employers and employees in the social insurance plan through regular contributions is compulsory. In accordance with Saudi's Social Insurance Law, Wackenhut ensured that the mandatory contributions were made on behalf of its employees working in Saudi Arabia.[2]

In addition to contributing to Saudi's compulsory insurance plan, Wackenhut subscribed to a "Standard Workmen's Compensation Employers Liability Policy" from INA (the "Wackenhut Policy") for the benefit of its employees working in Saudi Arabia. Under Coverage C of the Wackenhut Policy, "VOLUNTARY COMPENSATION—FOREIGN OPERATIONS ENDORSEMENT", if a Wackenhut employee is injured outside his country of origin, the employee is entitled to an amount equal to the compensation and other benefits which

---

1. Bushell actually signed two employment contracts with Wackenhut. The first contract was entered into on January 13, 1983 and the second on February 14, 1983. The two agreements are identical except for the monthly base salary that Bushell was to receive.

2. Article 19 of Saudi's Social Insurance Law provides:

The employer shall be under obligation to pay to the General Organization the full amount of the contributions due from him and from his insured workmen, and he alone shall be responsible towards the General Organization for the payment of such contributions. In return, the employer may deduct from the wages of the insured the contributions due from him every time he pays him his wages. Should the employer neglect to withhold the workmen's contribution upon payment of the wages, he may not withhold such contribution in any form whatsoever at any later date.

would have been payable under the law of the employee's country of origin.

On November 27, 1984, Bushell was injured while a passenger in an automobile driven by a fellow employee. The accident occurred in Saudi Arabia near the border of Saudi Arabia and Jordan. As a result of the accident, Bushell sustained a fractured lower back which rendered him permanently and totally disabled.

After his injury, Bushell applied for benefits under Saudi's Social Insurance Law. As of March, 1988, that claim had not been resolved. The Court is unable to discern from the current record whether Bushell's social insurance claim was ever paid.

Bushell also sought workers' compensation benefits under the Wackenhut Policy. In late 1985, INA informed Bushell that the Wackenhut Policy entitled him to compensation in an amount equivalent to the Social Security benefits of the United Kingdom. INA tendered a $205,000 lump sum payment to Bushell upon the condition that he execute a release of all claims against INA and Wackenhut. Bushell has yet to sign the release and as of April, 1988, the monies were being held in his attorney's client trust account.

As a United Kingdom national unable to work due to an industrial injury, Bushell is also entitled to indebility benefits and supplementary allowances through the Department of Health and Social Services of the United Kingdom. Under these government benefits, Bushell is receiving 74.41 pounds sterling per week.

In the fall of 1987, Bushell filed this lawsuit against Wackenhut and INA. Count I of the complaint alleges that Wackenhut breached its agreement to secure the payment of compensation in accordance with Florida's workers' compensation law. It further alleges that as a result of Wackenhut's failure to provide workers' compensation insurance pursuant to Florida law, Wackenhut is liable to Bushell for the injuries he sustained in his employment as a result of the negligence of Wackenhut

and/or Wackenhut's employees.[3] In Count II Bushell alleges that INA breached its contract of insurance with Wackenhut by its failure to authorize payment of workers' compensation coverage in an amount up to 2,000,000 British pounds sterling. Count III alleges that Wackenhut breached its contractual duty under the employment agreement by its failure to provide compensation benefits up to 2,000,000 British pounds sterling.

Bushell and Wackenhut now move for summary judgment on various issues. Bushell seeks to obtain an order declaring that Florida law applies to this action and as a result, he is entitled to maintain a negligence action against Wackenhut pursuant to Florida Statutes Section 440.11. Wackenhut cross-moves for summary judgment on Bushell's negligence claim, arguing that Florida law does not apply and the negligence claim Bushell has asserted against it should therefore be dismissed. Bushell has also moved for partial summary judgment against INA. In that motion, Bushell seeks an order declaring that under the Wackenhut Policy, INA is obligated to provide Bushell with up to 2,000,000 pounds sterling of workers' compensation coverage. Each issue will be addressed in turn.

## II. *Applicable Law*

The threshold issue is the law to be applied. In paragraph 24 of their employment agreement, Wackenhut and Bushell agreed that their agreement shall be construed in accordance with the laws of the Kingdom of Saudi Arabia and the State of Florida. Bushell argues that in accordance with that provision, the Court must apply Florida law. Wackenhut, on the other hand, argues that their choice of law provision requires the Court to apply Saudi Arabia law.

■ A federal court sitting in diversity is bound to apply the conflict of laws doctrine of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct.

---

**3.** Florida Statutes Section 440.11 expressly provides that where an employer fails to obtain workers' compensation coverage, an injured employee may maintain an action at law for damages on account of such injury.

1020, 1021, 85 L.Ed. 1477 (1941); *Forzley v. AVCO Corporation Electronics Division,* 826 F.2d 974, 978 (11th Cir.1987). Under Florida choice of law principles, the contractual selection of governing law "will be applied so long as there is a reasonable relationship between the contract and the state whose law is selected and the selected law does not conflict with Florida law or confer an advantage on a non-resident party which a Florida resident does not have." *Forzley,* 826 F.2d at 978 (citing *Department of Motor Vehicles v. Mercedes–Benz of North America, Inc.,* 408 So.2d 627, 629–30 (Fla. 2d DCA 1981)).

■ Applying this test to the present case, we find nothing in the record which in any way reasonably connects the contract before us with the state of Florida. Rather, Florida conflict of laws principles prompts the conclusion that Saudi Arabia law should apply.

The parties' contract was an employment agreement. It was not executed in Florida. It was not to be performed in Florida. There is simply no reasonable relationship between Florida and the subject matter of the contract.

■ Moreover, there is evidence that Florida intended to restrict the extraterritorial application of its workers' compensation laws. *See Department of Motor Vehicles v. Mercedes–Benz of North America, Inc.,* 408 So.2d 627, 630 (Fla. 5th DCA 1981) (there being no evidence that the New Jersey Legislature intended to restrict application of statute governing transfer of franchise, automobile franchisor that contracted in New Jersey to have New Jersey substantive law apply to it could not be heard to complain about extraterritorial application of the statute). Florida Statutes Section 440.09(1) provides in pertinent part:

> Where an accident happens while an employee is employed elsewhere than in this state, which would entitle him or his dependents to compensation if it happened in this state, the employee or his dependents shall be entitled to compensation if the contract of employment was made in this state, or the employment was principally localized in this state.

Thus, there are only two situations where Florida extends the application of its workers' compensation laws to provide coverage for an out-of-state accident: (1) the contract of employment was entered in the State of Florida; or (2) the employment was principally localized in the State of Florida. Neither of these situations have occurred here.

On the other hand, a reasonable relationship exists between the contract and Saudi Arabia. The contract provided that Bushell was to work in Saudi Arabia. Further, there is no evidence that the Kingdom of Saudi Arabia intended to preclude application of its Social Insurance Law to Bushell. Indeed, Bushell and Wackenhut's participation in Saudi's social insurance plan was compulsory because Bushell worked for wages primarily within Saudi Arabia.

■ Following Florida conflict of laws rules, we are bound to apply Saudi Arabia law to this controversy. Accordingly, the Court denies Bushell's motion for partial summary judgment and grants summary judgment in favor of Wackenhut on Bushell's negligence claim brought pursuant to Florida Statutes Section 440.11.

### III.   *Coverage Under Wackenhut Policy*

■ In his motion for partial summary judgment against INA, Bushell argues that no genuine issue exists as to the question of whether there is a limitation of $210,000 under Coverage C of the Wackenhut Policy. INA argues that a fair reading of the deposition of Andrew MacKinnon ("MacKinnon"), Casualty Manager for INA's International Department of Special Risk Facilities, and MacKinnon's affidavit raise a genuine issue which preclude a grant of summary judgment. To the contrary, Bushell argues that MacKinnon's deposition unequivocally states that there is no coverage limitation of $210,000 and that Bushell is entitled to up to 2,000,000 pounds sterling of workers' compensation coverage. He further argues that MacKinnon's affidavit should be disregarded because it conflicts with MacKinnon's earlier deposition

**1578**

testimony and is a blatant attempt to avoid summary judgment through the manufacture of sham issues.

In *Van T. Junkins and Associates v. U.S. Industries,* 736 F.2d 656 (11th Cir. 1984), the Eleventh Circuit accepted the proposition that a court may disregard an affidavit as a matter of law when it constitutes a sham. In that case, the president of Van T. Junkins "made crystal clear in three places in the deposition" that there was no condition attached to their agreement that he was required to purchase one of their buildings in order to be awarded a dealership. *Id.* at 657. Van T. Junkins later attempted to avoid summary judgment with its president's contradictory affidavit. In the affidavit, the president stated that he would be awarded the dealership only if he would purchase one of their buildings. The Eleventh Circuit held that the affidavit should be disregarded as a sham. The court further held that an affidavit may only be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.*

Applying these principles to the present case, we find that MacKinnon's affidavit serves to create a genuine issue which would preclude summary judgment. MacKinnon's affidavit does not merely contradict his deposition testimony, but rather it explains certain aspects of his deposition testimony. MacKinnon stated that he was confused at one point during the deposition when he thought he was being questioned about Coverage B, Employers Liability Coverage, whereas in fact he was being questioned about Coverage C, Workers' Compensation Coverage. MacKinnon's assertion in his affidavit that he was confused is plausible. The questioning during the deposition frequently shifted between Coverage B and Coverage C. There is thus a tangible basis for MacKinnon's explanation of the inconsistencies. Moreover, immediately after stating that Coverage C of

the Wackenhut Policy would provide Bushell with Employers Liability Coverage, MacKinnon testified that under the Employer Liability Law of the United Kingdom, a United Kingdom national working in the United Kingdom would be entitled to 2,000,000 pounds sterling. He did not state that Bushell, a United Kingdom national working outside the United Kingdom, was entitled to 2,000,000 pounds sterling.

The deposition testimony of Anna Palumbo, an account manager with INA's insurance broker, also lends credence to MacKinnon's affidavit. During her deposition, Palumbo testified that the Certificate of Insurance issued to the Saudi Arabian government declared that the Wackenhut Policy provided workers compensation benefits pursuant to the United Kingdom's Social Security System. Palumbo further testified that according to the Certificate of Insurance, the Wackenhut Policy limited Employers Liability Coverage for United Kingdom nationals working at Wackenhut's Saudi Arabian operations to $210,000.

The testimony of MacKinnon needs to be fully explored by examination and cross-examination; and, an ultimate credibility decision made by an appropriate trier of fact. Moreover, MacKinnon's testimony needs to be considered in light of the testimony of other witnesses and relevant documents. In sum, when considering all the evidence in the record in a light most favorable to INA, sufficient evidence exists to raise a genuine issue of material fact. Accordingly, Bushell's motion for partial summary judgment against INA is denied.

### III. *Conclusion*

By this Order, the Court is granting Wackenhut's Motion for Summary Judgment on Count I of Plaintiff's complaint and denying Bushell's motions for summary judgment. The trial of this case will be set by separate order. If any of the parties desire a pretrial conference, the Court will entertain a motion.

DONE AND ORDERED.