**MEDICAL DESIGNS, INC., Plaintiff,**

v.

**DONJOY, a California Corporation, Defendant.**

Civ. No. 88–1849–E(CM).

United States District Court, S.D. California.

Dec. 4, 1991.

Edward J. McIntyre, Jonathan B. Sokol, Gray, Cary, Ames & Frye, San Diego, CA, for plaintiff Medical Designs, Inc.

Lester L. Hewitt, Richard D. Fladung, Paul E. Krieger, Pravel, Gambrell, Hewitt, Kimball & Krieger, Houston, TX, for defendant Donjoy.

## MEMORANDUM DECISION AND ORDER

WILLIAM B. ENRIGHT, District Judge.

### BACKGROUND

This is a patent infringement case brought by Medical Designs, Inc., the in-

ventor of a knee brace device, against Donjoy, Inc., the alleged infringer. The suit was filed in the Northern District of Texas in November 1987 and transferred to this district by stipulation in December 1988. The court granted Donjoy's motion to bifurcate the liability and damages phases.

Medical Designs contends that in early 1980, one of its owners, Gary Bledsoe, conceived and reduced to practice a knee brace that attached to the leg via Velcro tabs and allowed an adjustable range of motion for recuperating patients ("Bledsoe brace"). The Bledsoe brace offered several advantages over knee braces commonly used at that time: it was easily adjusted for different sizes of legs; it adjusted through hinges to allow any range of motion desired by the doctor; it was quickly and easily applied; it could be removed and reapplied at will; it was light-weight; and it was relatively inexpensive. Other braces in effect in 1980 primarily were rigid, applied as casts or with compounds and were not easily removable.

On January 22, 1981, Bledsoe applied for a patent for his brace. During prosecution of his application, Bledsoe did not have to limit the scope of any of his claims. The Bledsoe brace received a patent on the brace on October 4, 1983. Bledsoe had assigned ownership of the patent to Medical Designs, which has manufactured the brace ever since.

In this action, Medical Designs is suing Donjoy for alleged patent infringement. Medical Designs alleges that three different types of braces manufactured by Donjoy infringe Medical Designs' patent. Medical Designs seeks reasonable royalties for each infringing device Donjoy manufactured and sold.

Donjoy contends that Medical Designs' patent is invalid. Donjoy asserts that Bledsoe did nothing more than combine existing art in making his brace, and that, therefore, the patent is invalid because the brace was obvious to a person of ordinary skill in the art. Specifically, Donjoy contends that Drs. Jones and Mauldin had built prototypes of their braces by 1979. These braces were very similar to the Bledsoe brace, with all of the same advantages over rigid braces. By July of 1980, the Mauldin/Jones brace was used on patients in Texas. Further, two other companies were making similar adjustable knee braces prior to 1980 and had received patents. Donjoy thus contends that the Bledsoe brace was merely an obvious extension of prior art, including of the Mauldin/Jones braces. Donjoy also contends that Medical Designs' patent is invalid under the doctrine of simultaneous invention because others, including Drs. Jones and Mauldin, were at least working on similar inventions at the same time. Further, Donjoy asserts the patent is invalid under the doctrine of double patenting because Medical Designs received both a design patent and a utility patent on practically the same brace. Donjoy asserts that the two patents contain almost identical drawings, and thus are at least obvious variations of each other. Finally, Donjoy also contends that it is merely using prior art in making its braces, and thus is not infringing Medical Designs' patent.

Of course, Medical Designs challenges Donjoy's contentions. Medical Designs questions the timing of the invention by Drs. Mauldin and Jones. Medical Designs also contends that its brace was new and not obvious or an extension of prior art.

Here, Donjoy moves for summary judgment on the ground that its brace does not infringe Medical Designs' patent because the Donjoy braces do not use variably attachable devices to fasten the straps to the brace. Donjoy asserts that during prosecution of the patent, the examiner initially rejected Medical Designs' patent application, requiring Medical Designs to show why its particular brace was new or different from prior art. After meeting with representatives from Medical Designs, the patent examiner noted in his record that the "particular Velcro attachment of the braces and pads as well as the braces and encircling straps is considered novel." Thereafter, Medical Designs changed the language of its patent application describing the attachment from "selectively at-

tached" to "selectively attachable." The patent was then assigned.

Two types of Donjoy's braces use straps held in place by channels in the brace itself, much like beltloops. Another Donjoy model uses frictional attachments. Donjoy argues that these types of attachments were all present in prior art and are not covered by the Medical Designs patent. In fact, Donjoy argues that the existence of such attachments is precisely why Medical Designs had to rely on the novelty of its Velcro attachments in order to receive the patent.

Medical Designs argues that its patent is not so limited to Velcro-type fasteners. Furthermore, Medical Designs argues that under the doctrine of equivalents, Donjoy's braces infringe.

The parties also have filed cross-motions for summary judgment on the issue of validity of the Medical Designs patent. Donjoy asserts that the patent is invalid because of prior art, such as the Mauldin/Jones brace. Thus, Medical Designs' brace was obvious from prior art, was not the first such brace, and/or was anticipated by prior art. Also, the utility patent is invalid because it is also covered by a design patent. Donjoy points out that although Medical Designs has alleged infringement of the design patent, it fails in its opposition papers to rebut Donjoy's arguments regarding non-infringement and invalidity of the design patent. Therefore, Donjoy asserts that Medical Designs has waived its claim for infringement of the design patent.

Medical Designs raises counter arguments against Donjoy's motion and in support of its own, asserting that Bledsoe was the first to combine the unique elements of the brace. Both parties challenge the stories of the other side's inventors regarding the dates of invention.

## DISCUSSION

### I. NON–INFRINGEMENT

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party which "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the burden of proving that there is no genuine issue of material fact and that judgment may be entered as a matter of law. *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987). "[A] party opposing a properly supported motion for summary judgment . . . 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*citing* Fed.R.Civ.P. 56(e)) (footnotes omitted).

Determination of patent infringement is a two-step process. First, the claims must be interpreted in order to determine their scope. *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 671 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). Second, the interpreted claims are analyzed in order to see whether they cover the accused product. Infringement is found if the accused product meets every limitation of a patent claim exactly or by a substantial equivalent. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–36 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426, 485 U.S. 1009, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988). Under the doctrine of equivalents, an accused product that does not literally infringe a structural claim may yet be found an infringement "if it performs substantially the same function in substantially the same way to obtain the same result" as the claimed product or process. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed.Cir.1983).

The doctrine of prosecution history estoppel precludes a patent owner from obtaining a claim construction that would resurrect subject matter surrendered during prosecution of his patent application. The estoppel applies to claim amendments to overcome rejections based upon prior

art, and to arguments submitted to obtain the patent. *Id.* at 1362 (citations omitted).

■ Here, during the prosecution of the patent application, Medical Designs changed the language of its claim to describe "selectively attachable" fasteners. The examiner indicated that the moveable attachments were the novel element of the brace. Prior to the change in language, the examiner had rejected the patent application. Medical Designs argues that the change in language did not limit its claim to Velcro-type attachments and was not made in order to overcome prior art or obtain the patent. The plain meaning of "attached" differs from "attachable"; the former connotes straps fastened to the braces, while the latter connotes straps that are capable of being fastened, but not permanently attached. Extrinsic evidence is not needed to see that the meaning of the words differ. The examiner's summary indicates that the change in language was precisely to so indicate the use of a different type of fastener, namely, moveable Velcro-type attachments. Further, it is apparent that the change was made in order to convince the examiner, who had rejected the patent application because of prior art, that the brace was novel in some way and hence patentable. Thus, Medical Designs surrendered the idea of "selectively attached" straps in order to obtain the patent.

The question then becomes whether the claim as interpreted applies to Donjoy's braces. Clearly, the braces utilizing straps that fit through channels are not selectively attachable. Such straps are attached, not attachable. The braces themselves, however, are attached to the underlying pads by Velcro, and thus are selectively attachable. This is one of the points made by the examiner regarding the novelty of the Medical Designs brace. Also, the friction attachment of one type of Donjoy's braces may fall within the "selectively attachable" definition.

The examiner based approval of the patent on the novelty of Medical Designs' attachments. Medical Designs should not now be able to expand the definition of its patent to include the very channel-type straps that the examiner viewed as prior art. Accordingly, pursuant to Federal Rule of Civil Procedure 56(d), the court deems established the fact that Donjoy's R.O.M., System 2 and original System 2 braces, which do not use selectively attachable straps, do not infringe Medical Designs' patent. Medical Designs gave up any claim over the type of strap these braces use during prosecution of the patent. It should be estopped from resurrecting the subject matter now. Furthermore, the court grants summary judgment on Medical Designs' claim for infringement of its design patent because Medical Designs failed to oppose Donjoy's motion as to this claim. *See* Fed.R.Civ.P. 56(e).

As to the Donjoy System 1 brace using frictional attachments, however, it is less than clear from the parties' papers whether this constitutes selective attachability. Accordingly, the issue of infringement as to that type of Donjoy brace is a question to be resolved at trial.

## II. VALIDITY OF THE PATENT

■ Both sides bring motions for summary judgment on the validity of the patent. The arguments revolve around whether Drs. Jones and Mauldin invented their brace before Bledsoe invented his. Also, the parties differ on whether the Jones/Mauldin brace is the same as the Bledsoe brace. In addition to differing on the factual issues, they also differ on the standards applied to the facts. Much of the dispute involves credibility of witnesses, interpretation of documentary evidence, and other clearly factual questions. Neither side has shown that there is no genuine issue of material fact and that judgment may be entered as a matter of law. *Richards, supra,* 810 F.2d at 902. Accordingly, the court denies both motions for summary judgment as to invalidity of the patent.

## III. MOTION TO STRIKE

Medical Designs also moves for the court to strike two pieces of evidence and all references to them. The evidence it seeks

to strike is a May 5, 1990, letter about the Jones/Mauldin brace and the brace itself in one of its embodiments. The grounds for striking the letter are that it is hearsay and fails to comply with the best evidence rule. The ground for striking the brace is that it is improperly authenticated. Obviously, these pieces of evidence go to the very heart of Donjoy's case. Donjoy's witnesses can vouch for the authenticity of the letter and the brace. At this juncture, that is enough to warrant denying this motion.

### CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby denies the parties' motions for summary judgment as to infringement and validity of the patent. The court grants partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(d) in favor of defendant on the issue of infringement as to defendant's R.O.M., System 2 and original System 2 braces. The court also grants summary judgment on plaintiff's claim for infringement of its design patent. The court denies plaintiff's motion to strike evidence.