**ZMI CORPORATION,**
Plaintiff–Appellee,

v.

**CARDIAC RESUSCITATOR CORPORA-
TION, Defendant–Appellant.**

No. 87–1338.

United States Court of Appeals,
Federal Circuit.

April 22, 1988.

"Heart Aid" Models 80, 95 and 97 and "Pace Aid" Models 50, 52 and 53. For the purpose of this infringement suit, all three of the Heart Aid models are considered together as are all three of the Pace Aid models.

When a heart has stopped (asystole) or has slowed to the point of no longer being life sustaining, or when ventricular fibrillation occurs (i.e., an electrical malfunctioning of the heart evidenced by irregular beating that prevents blood from flowing through the heart), an electrical stimulus applied to the heart may defibrillate the heart and/or pace the heart at a selected rate.

In the 1950's, external, noninvasive pacing was first introduced to artificially stimulate hearts with pulses of electricity applied externally. This method failed to gain widespread acceptance because the external application of pulses of electricity caused too much pain to the patient. In passing the electrical pulses through the skin and the skeletal muscles of the body to reach the heart, the patient experienced violent and painful chest pounding and painful stinging of the skin. To avoid these problems, invasive pacing techniques were developed whereby electrical pulses were delivered to the heart by electrodes placed inside the body. However, these methods proved too slow and invasive to be satisfactory.

The '030 patent is directed toward a system for applying external noninvasive cardiac stimulation whereby electrical pulses are applied to a patient externally but are within a pain threshold so as to be useful on a conscious patient. The patent states that this is accomplished "through the use of electrodes with large surface, nonmetallic, skin-contacting members providing low current density, and also through the use of a pulse generator for the electrodes that provides constant current without spikes." The '030 patent has two independent claims: apparatus claim 1 and method claim 14.[1] The district court found that

Robert E. Hillman, Fish & Richardson, Boston, Mass., argued, for plaintiff-appellee. With him on the brief, was G. Roger Lee.

Jerry D. Voight, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued, for defendant-appellant. With him on the brief, was C. Larry O'Rourke.

Before ARCHER, Circuit Judge, NICHOLS, Senior Circuit Judge, and MAYER, Circuit Judge.

ARCHER, Circuit Judge.

Cardiac Resuscitator Corporation (CRC) appeals from a judgment of the United States District Court for the District of Oregon in favor of ZMI Corporation (ZMI) holding that CRC infringed U.S. Patent No. 4,349,030 ('030) which issued to Alan Belgard, et al. and was assigned to ZMI. We reverse-in-part, vacate-in-part, and remand.

## Background

ZMI sued CRC for infringement of the '030 patent directed to an external, noninvasive cardiac stimulation device. Six models of cardiac stimulation devices manufactured by CRC were found to infringe:

---

1. Claims 1 and 14 are appended. Only claim 1 is discussed herein but the analysis applies equally to claim 14. The remaining claims in the '030 patent are all dependent from these

each of these claims includes the following three components:

1. a pulse duration longer than five milliseconds;
2. constant current pulses without high current spikes; and
3. electrodes that have nonmetallic skin-contacting members.

It is not disputed on appeal that the accused devices include the first two components (pulse duration longer than five milliseconds and constant current pulses without spikes). The dispute here goes to whether the accused devices meet the claim limitation:

a pair of electrodes having nonmetallic skin-contacting members that provide low current density to reduce stimulation of local sensory nerves and resulting pain.

CRC argues that it is the electrodes themselves that must function to provide the low current density, while ZMI argues that the three element combination provides the low current density.[2]

The district court found that "[t]he electrode covered by the patent must be nonmetallic and provide low current density in order to reduce the stimulation of local sensory nerves which results in pain" but also found that "a person skilled in the art would understand that the requirement that the electrodes deliver low current density is a result of the three element combination and not simply a result of the electrodes themselves." The court went on to say that:

The relevant inquiry before this court as to the electrode element of this patent is whether CRC's devices use nonmetallic electrodes in combination with the other two elements of the invention, constant current and long pulses, in order to provide lower current and resulting low current density. There is no dispute that CRC's devices do that.

The primary difference for the purpose of this infringement suit between CRC's Pace Aid and Heart Aid models is in the amount of current supplied. The Heart Aid model, used in emergency situations when ventricular fibrillation occurs, transmits too high a current to make it tolerable to most conscious patients. The Pace Aid model, on the other hand, uses a much lower current and is useful on conscious patients.

CRC argues on appeal that the district court erred in its interpretation of the claims and that when properly interpreted the claims are not infringed by the Heart Aid and Pace Aid devices either literally or under the doctrine of equivalents.

## OPINION

Analysis of patent infringement involves two inquiries: first the claims must be properly construed to determine their scope and then it must be determined whether the properly interpreted claims encompass the accused structure. *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986). Literal infringement requires that every limitation of the patent claim must be found in the accused device. *Id.* Improper claim construction, i.e., an improper determination of the scope of the claims, can distort the entire infringement analysis. *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed.Cir. 1986).

### A. Claim Construction

"Claim construction is reviewed as a matter of law.... However, interpretation of a claim may depend on evidentiary material about which there is a factual dispute, requiring resolution of factual issues as a basis for interpretation of the claim.... The question of literal infringement (do the claims read on the accused device) is determined as a factual inquiry and is reviewed

claims. Therefore, if claims 1 and 14 are not infringed, none of the claims are infringed.

2. Current density means the amount of current applied per unit area. The current density is a function of several factors including the amount of current applied, the impedance, resistivity or conductivity of the electrode, and the surface area of the electrode.

on a clearly erroneous standard." *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1054, 1988 WL 990, 5 USPQ2d 1434, 1441 (Fed.Cir.1988).

The district court found:

All claims of the Belgard patent contain the following three essential elements required by independent claims 1 and 14:

1. two electrodes having nonmetallic skin-contacting members that provide low current density to reduce stimulation of local sensory nerves and resulting pain;

2. constant current pulses without high-current spikes that cause skeletal muscle contraction;

3. a pulse duration of greater than 5 milliseconds to reduce the threshold current required for cardiac stimulation to permit the use of lower current pulses to provide effective stimulation at the same time that skeletal muscle contraction is reduced by the lower current.

After holding that the constant current and the pulse duration limitations of the claims are found in the accused device, the district court explained with respect to the claim limitation relating to the electrodes:

The current density provided by the electrodes is primarily a function of the current coupled to them by the electric signal source....

The court finds that a person skilled in the art would understand that the requirement that the electrodes deliver low current density is a result of the three element combination and not simply a result of the electrodes themselves....

The relevant inquiry before this court as to the electrode element of this patent is whether CRC's devices use nonmetallic electrodes in combination with the other two elements of the invention, constant current and long pulses, in order to provide lower current and resulting low current density. There is no dispute that CRC's devices do that.

CRC argues that the district court erred, as a matter of law, when it "construed the requirement for low current density as applying to 'the entire [claimed] system.' "

CRC argues that the district court failed "to accept the plain words of the claims in view of the patent specification and ... prosecution history." In essence CRC contends that the plain meaning of the claim as drafted requires something in the structure of the electrode that causes a low current density, as for example, electrodes having a high impedance or a large surface area. CRC argues that since its electrodes are low impedance electrodes they do not provide the low current density and therefore its Pace Aid and Heart Aid devices do not infringe.

ZMI responds by arguing that according to its expert " 'the only reason current density appears in that location [in the claim] is that's where [the current] is actually delivered to the skin.' In other words, the low current density provided by the whole system—by all the elements of the claim—is delivered to the patient by the electrodes, thus accounting for its grammatical location in the claim." ZMI further states that no electrode can itself provide low current density. Rather, the current density provided by electrodes is primarily a function of the current coupled to them by an electric signal source.

In interpreting claims resort should be made to the claims at issue, the specification, and the prosecution history. *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir.1985). All three are illuminating in this instance.

1. *The claims*

"The threshold requirement in claim construction is an examination of the claim at issue." *McGill Inc. v. John Zink Co.*, 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed. Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). The terms of a claim will be given their ordinary meaning, unless it appears that the inventor used them differently. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984).

■ ZMI stipulated at trial, and concedes on appeal, that from a grammatical point of view, the low current density recitation in

the claims modifies the word "electrodes." Thus, the phrase in dispute seems to require an electrode structure that results in the described limitation of low current density.[3] The ordinary meaning of claim language, however, is not dispositive and resort must still be had to the specification and prosecution history to determine if the inventor used the disputed terms differently than their ordinary accustomed meaning. *See McGill Inc.*, 736 F.2d at 672–74, 221 USPQ at 948–50.

## 2. The specification

■ Patent law allows an inventor to be his own lexicographer. "[T]he specification aids in ascertaining the scope and meaning of the language employed in the claims inasmuch as words must be used in the same way in both the claims and the specification." *Autogiro Co. of America*, 384 F.2d at 397, 155 USPQ at 702–03. The district court largely ignored the specification in interpreting the claims, making only passing reference in its opinion to the specification and then only to point to a change made prior to filing the patent application.

The '030 specification provides:

It has been discovered that the severe pain from stimulation of local sensory nerves during external electric cardiac stimulation can be largely eliminated by the use of electrodes with large-surface, non-metallic, skin-contacting members providing low current density.

This portion of the specification indicates that it is the electrodes, because of large surface, high impedance or otherwise, which provide the low density current. Therefore, this part of the specification supports an interpretation that gives the language of the claims its plain meaning.

The specification also discloses that, in operation, the electrodes "are first dampened with tap water, alternatively, a weak

electrolyte, such as sodium bicarbonate, or a gel may be used." ZMI argues that some of these materials have resistivities as low as 50 ohm-cm[2] and that "the patent was not geared to just high impedance, but included even low impedance materials." We note there was testimony that some gels have resistivities this low but the specification does not suggest that a gel with a low resistivity should be used nor is a specific example of that type of gel provided. Further, it is not in dispute that tap water is a high impedance material. The specification, therefore, again supports an interpretation that the plain meaning was intended by the portion of the claims at issue.

## 3. The prosecution history

■ Resort to extrinsic evidence, such as the prosecution history, is necessary to interpret disputed claims. *Moeller*, 794 F.2d at 656, 229 USPQ at 994; *SSIH Equipment S.A. v. USITC*, 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.1983) (the prosecution history is always relevant to proper claim interpretation). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985); *see also McGill Inc.*, 736 F.2d at 673, 221 USPQ at 949. Although the district court acknowledged that the claims must be interpreted in light of the prosecution history, the court did not refer to the prosecution history in its opinion. The interpretation of the claims which the district court found, and which ZMI urges is correct, was disclaimed by applicants during prosecution of the '030 patent.

■ After the application which eventually issued as the '030 patent was filed,

---

**3.** As the dissent points out, electrodes cannot, without some source of power such as a "generator," "provide" a current density. Our concern here, however, is with a limiting phrase, "provide low current density to reduce ... pain," which the patentee, as his own lexicographer, has used, *see Autogiro Co. of America v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 397, 155 USPQ 697, 702 (1967), and which, it is conceded, grammatically modifies the term "electrodes." We must determine in accordance with established claim construction principles whether it has meaning as a limitation of the electrodes or whether it must be construed as a limitation of the three element system.

the patent office issued a first rejection. Originally filed claim 1 read in pertinent part:

> a pair of electrodes having nonmetallic skin-contacting members that provide low current density.

Claim 1 was amended after this rejection to read in pertinent part:

> a pair of electrodes having nonmetallic skin-contacting members that provide low current density to reduce stimulation of local sensory nerves and resulting pain.

(The underlined words were added by the amendment.) Accompanying this claim amendment were remarks which summarized this portion of the invention as follows:

> the pain resulting from stimulating local sensory nerves is avoided by the nonmetallic members, which provide low current density during the communication of the electrical stimuli to the patient's skin.

The amendment and accompanying remarks make it clear that the reduction of pain through the transmission of a low current density to the skin is intended to be a functional limitation on the nonmetallic members, or the electrodes.

There is still further evidence in the prosecution history as to the proper claim interpretation. The two independent claims were rejected during prosecution as obvious in view of three prior art references. The examiner stated that the "use of nonmetallic skin contacting members" was obvious in view of the Moore reference, U.S. Patent No. 3,762,420. Applicant in response said:

> Moore ... teaches away from applicants' electrodes that provide low-current density by disclosing a defibrillation electrode employing a gauze pad soaked in saline "solution having high conductive properties" (col. 2, line 14) to meet the "requirement of good electrode-patient contact" (col. 1, lines 36–7) imposed by "[t]he large currents which must flow through the electrodes and into the patient, in order to achieve defibrillation" (col. 1, lines 34–6).

Moore discloses only an electrode and not a whole system for cardiac stimulation and therefore the distinction applicants made applied to the electrodes alone. Again, low current density provided by the electrodes was the focus, not low current density resulting from other system components.

#### 4. *Conclusion*

■ We conclude that the district court erred as a matter of law in its interpretation of claims 1 and 14. *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983). The claims, as properly interpreted, are limited to an electrode which functions to lower the current density (as, for example, by having a high resistivity or large surface area) applied to the patient's skin "to reduce stimulation of local sensory nerves and resulting pain."

### B. Infringement

#### 1. *Heart Aid*

■ In its brief to this court ZMI states:

> ZMI concedes that the Heart Aid models do not literally infringe the claims because they use too high a current (150 ma) to make them tolerable to most conscious patients; thus they lack the required low current and low current density.

In view of this admission, the district court's finding of literal infringement must be reversed. ZMI contends, however, that the case must be remanded for findings under the doctrine of equivalents. We disagree.

■ When literal infringement is not found, the equitable doctrine of equivalents comes into play. Under the three-pronged analysis from *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608–09, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950), infringement under the doctrine of equivalents depends on whether the accused device performs substantially the same function in substantially the same way to achieve the same result.

To be infringing under the doctrine of equivalents the Heart Aid devices would have to provide "low current density to

reduce stimulation of local sensory nerves and resulting pain." The concession by ZMI means that the accused devices do not perform substantially the same function (work) in substantially the same way. The Heart Aid devices admittedly do not provide low current density, and because the current transmitted makes them intolerable to most conscious patients they do not reduce stimulation to the local sensory nerves and reduce pain. Thus, they do not perform substantially the same function in substantially the same way and do not infringe under the doctrine of equivalents. Accordingly, there is no need to remand to the district court for a finding as to infringement of the Heart Aid devices under the doctrine of equivalents.

## 2. *Pace Aid*

 The Pace Aid devices, on the other hand, do provide low current density, but because the district court's finding of literal infringement was predicated on an improper construction of the claims of the '030 patent that portion of the district court's judgment must be vacated and remanded. On remand the court must determine whether the claims as interpreted above read on the Pace Aid devices, and in particular the electrode element employed by such devices, or whether the Pace Aid devices infringe under the doctrine of equivalents. *See Graver Tank*, 339 U.S. at 608–09, 70 S.Ct. at 856, 85 USPQ at 330. Infringement requires that every limitation of the patent claim must be found in the accused device either literally or equivalently. *See Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935, 4 USPQ2d 1737, 1739–40 (Fed.Cir.1987); *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532–33, 3 USPQ2d 1321, 1324–25 (Fed.Cir.1987). The party alleging infringement has the burden of proving infringement by a preponderance of the evidence. *Uniroyal, Inc.*, 837 F.2d at 1054, 5 USPQ2d at 1441.

## Conclusion

The district court's finding of infringement of claims 1 and 14 by the Heart Aid devices is reversed. The court's finding of

infringement by the Pace Aid devices is vacated and the case is remanded for consideration of infringement under properly interpreted claims.

## Costs

Each party shall bear its own costs.

REVERSED–IN–PART, VACATED–IN–PART AND REMANDED.

## APPENDIX

1. An external noninvasive electric cardiac stimulation system comprising

a pair of electrodes having nonmetallic skin-contacting members that provide low current density to reduce stimulation of local sensory nerves and resulting pain,

a pulse generator electrically connected to said electrodes,

said generator including means to provide constant current pulses without high current spikes that cause skeletal muscle contraction,

said pulses being greater than 5 milliseconds in duration to reduce the threshold current required for cardiac stimulation, to permit the use of lower current pulses to provide effective stimulation at the same time that skeletal muscle contraction is reduced by the lower current, and

means to activate said pulse generator to provide said current pulses.

. . . .

14. A method for providing external noninvasive electric cardiac stimulation comprising

attaching two electrodes to a patient's chest,

said electrodes having nonmetallic skin-contacting members providing low current density to reduce stimulation of local sensory nerves, and

sending electric pulses between said electrodes,

said pulses having constant current without high current spikes that cause skeletal muscle contraction and being of greater than 5 milliseconds duration

to reduce the threshold current required for cardiac stimulation, to permit the use of lower current pulses to provide effective stimulation at the same that skeletal muscle contraction is reduced at the lower current.

NICHOLS, Senior Circuit Judge, dissenting.

I find this decision troubling, much as I respect the skilled use of established methods of claim construction. We are up against what we must realistically consider a growing inability of speakers and writers, lawyers, technicians, and laymen, to say what they intend to say with accuracy and clarity.

Taken literally, the claim language is absurd. The electrodes cannot and do not *provide low current density to reduce * * * pain.* The generators do. House current would not do the job. Resort to the specifications and the prosecution history does not help because the same absurdity is repeated there. As 1988 claim interpreters, therefore, we must resort, as interpreters of statutes and contracts of recent origin must, to our gut feeling of what the inventor really meant to say.

By the dictionary, the word "provide" is often associated with the word "for." If you "provide for" a hurricane, that does not mean you cause or make a hurricane. Your arrangements must be compatible with a hurricane occurring. Here you must have constant current, without spikes, with pulses greater than 5 milliseconds. The electrodes must then be compatible, but I take it this court means the electrodes must be more than compatible to infringe, *i.e.*, must do more than "provide for."

I think the trial court, in the language quoted, meant that the low current density of the claims could result from special design means other than the electrodes. That it could be produced with *no* regard to the electrodes would make meaningless the requirement that the skin-contacting members be nonmetallic. They must be adapted to their function. That the electrodes could produce the desired effect without regard to what reaches them from the generator, *i.e.*, from house current, is equally absurd. Under the court's remand, the trial court will have to ascertain, by gut feeling, its own or that of witnesses, some notion of a middle ground, or what one skilled in the art would have thought. It is impossible to draw any bright line, impossible for us as it will be for the trial court.

I agree on reversal as to the Heart Aid, but as to the Pace Aid, I think the trial court grappled with the uncertainties involved as well as this court, and as well as will be possible after the remand. In such circumstances, I would have affirmed as to the Pace Aid.