6 F.3d 787
 28 U.S.P.Q.2d 1715
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GARGOYLES, INC. and Pro-Tec, Inc., Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 93-5026.
 United States Court of Appeals, Federal Circuit.
 Sept. 14, 1993.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Oct. 26, 1993.
 
 Before ARCHER, Circuit Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.
 DECISION
 RADER, Circuit Judge.
 
 
 1
 Gargoyles, Inc. and Pro-tec, Inc. (Gargoyles) appeal the United States Court of Federal Claims' finding that the United States Army did not infringe its design and utility patents. This court affirms the trial court's judgment on Gargoyles' design patent and on literal infringement of claims 2 and 8 of its utility patent. Because the Court of Federal Claims improperly applied infringement doctrines to the utility patent, this court vacates-in-part and remands.
 
 DISCUSSION
 
 2
 The United States Patent and Trademark Office issued to
 
 
 3
 Pro-tec U.S. Patent Nos. 270,165 (design patent) and
 
 
 4
 4,741,611 (utility patent). Pro-tec assigned both patents
 
 
 5
 to Gargoyles. The patents disclose protective eyeglasses
 
 
 6
 with zero power lenses, an integrally formed bridge, and
 
 
 7
 substantial wrap depth. The patented eyeglasses also
 
 
 8
 feature temple pieces attached to the lenses rather than a
 
 
 9
 frame, and a nosepiece capable of absorbing shocks to the
 
 
 10
 lenses. Gargoyles alleges that the United States Army
 
 
 11
 infringed its design and utility patents by procuring and
 
 
 12
 using "ballistic/laser protective spectacles."
 
 Design Patent
 
 13
 The trial court properly applied the "ordinary observer test" set forth in Litton Systems, Inc. v. Whirlpool Corp., 728 F.2d 1423, 221 USPQ 97 (Fed.Cir.1984):
 
 
 14
 [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.
 
 
 15
 Litton, 728 F.2d at 1444 (quoting Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 528 (1871)).
 
 
 16
 The trial court considered the differences between the lenses, nose pieces, and temple pieces of the accused device and the patented design. For instance, the side shields attached to the temple pieces of the accused product project a different appearance. In addition, the nose piece of the accused device attaches to the bridge quite differently from the design patent. The configuration of the nose pads also differ. In light of these differences, the trial court, with a thorough analysis, concluded that an ordinary observer would not consider the accused device confusingly similar to the patented design. This court finds no clear error in the trial court's findings.
 
 Utility Patent
 
 17
 Proper infringement analysis hinges on proper claim interpretation, the first step in ascertaining infringement. ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1578, 6 USPQ2d 1551, 1559 (Fed.Cir.1988). To interpret a claim, courts properly consult the patent specification, drawings, and prosecution history. Intervet Am. v. Kee-Vet Labs., 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989). When consulting the specification, a court must take care to avoid importing a limitation not found in claim language. Id.
 
 
 18
 The '611 patent includes the term "substantial wrap depth." This term refers to the distance the eyeglass lenses wrap around a wearer's head to provide peripheral protection.
 
 
 19
 The trial court improperly used the patent specification to limit the scope of the term "substantial wrap depth." The specification states that "an object of the invention [is] to provide eyeglasses having sufficient wrap depth to adequately shield the eye." The trial court reasons from this language that because the accused product adds side shields to increase peripheral protection, it does not have substantial wrap depth within the meaning of the claim. Gargoyles, Inc. & Pro-tec, Inc. v. United States, No. 342-88C, slip op. at 6 (Cl.Ct. Oct. 5, 1992).
 
 
 20
 The claim language is not as narrow as the trial court suggests. The patentee does not claim "sufficient wrap depth to adequately shield the eye." That language appears only in the specification. The patent claims "substantial wrap depth." The addition of side shields does not preclude the accused device from having substantial wrap depth. The claim--not the specification--measures the scope of the invention. Environmental Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 699, 218 USPQ 865, 871 (Fed.Cir.1983), cert. denied, 464 U.S. 1043 (1984). The addition of side shields for increased protection is not relevant to determining whether the accused device infringes. See, e.g., Radio Steel & Mfg. v. MTD Prods., Inc., 731 F.2d 840, 848, 221 USPQ 657, 663-64 (Fed.Cir.), cert. denied, 469 U.S. 831 (1984) (addition of a function to an otherwise infringing device will not avoid infringement).
 
 
 21
 Furthermore, the patent specification discloses that the glasses are "specially adapted for sports use." The accused device was designed for military use. Rather than defining the terms of the claim in light of the specification, the trial court interpreted the terms of the claim with an eye on the accused device's purpose. The court erred in concluding that because the accused product includes side shields to meet military requirements, it cannot have "substantial wrap depth" within the meaning of claim 1.
 
 
 22
 Claim 1 also requires lenses "having toric inner and outer surfaces which have radii of curvatures [sic] that are selected to provide zero power." The trial court interpreted "zero power" to incorporate the 1979 American National Standards Institute (ANSI) standards for industrial safety eye wear. Because the accused product did not fall within the range established by ANSI standards, the court determined that the accused product did not infringe the "zero power" limitation of the claim.
 
 
 23
 The terms of a claim carry "their ordinary meaning, unless it appears that the inventor used them differently." ZMI Corp., 844 F.2d at 1579. To determine if the patent uses a term differently than its ordinary meaning, the court should consider the specification and prosecution history. Id. at 1580.
 
 
 24
 In this case neither the term "zero power" nor any reference to ANSI standards appear in the specification or the prosecution history. Therefore, "zero power" should carry its ordinary meaning. Throughout the trial, witnesses for both parties testified that "zero power" meant non-corrective or non-prescriptive lenses. For example, Colonel Francis LaPiana, plaintiff's witness, and Bruce Stuck, defendant's witness, testified that "zero power" meant "non-prescriptive." Based on this undisputed testimony, the ordinary meaning of the term "zero power" is non-corrective or non-prescriptive. The trial court clearly erred by giving the term a specific narrow meaning without any justification in the patent or the prosecution history for departing from the ordinary meaning to one skilled in the art.
 
 
 25
 The trial court also found that a range of equivalents sufficient to cover the accused product under the doctrine of equivalents would ensnare prior art. Therefore the court refused to apply the doctrine of equivalents to claims 1 and 8. To detect whether prior art limited application of the doctrine of equivalents, the trial court applied the hypothetical claim analysis method. See generally, Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir.), cert. denied, 498 U.S. 992 (1990).
 
 
 26
 In order to apply the hypothetical claim analysis properly, however, the court must "visualiz[e] a hypothetical patent claim, sufficient in scope to literally cover the accused product." Wilson, 904 F.2d at 684 (emphasis in original). Thus, the hypothetical claim must encompass all features of the accused product. Then the trial court asks "whether that hypothetical claim could have been allowed by the PTO over the prior art." Id.
 
 
 27
 In this case, the trial court did not visualize a hypothetical claim of sufficient scope. Instead it visualized separate hypothetical claims with a single additional feature of the accused product--side shields in one case, temple-to-lens attachment in another, and special nose pads in still another. The trial court then found each hypothetical claim unpatentable because prior art included that particular feature.
 
 
 28
 The fact that additional limitations might have been found in the prior art does not mean that a single hypothetical claim sufficient in scope to encompass the accused product would not have issued. A proper hypothetical claim may have features found in the prior art the combination of which confer patentability. Rosemount, Inc. v. Beckman Instruments, Inc., 727 F.2d 1540, 1546, 221 USPQ 1, 7 (Fed.Cir.1984). Focusing on the unpatentability of a single aspect of the subject matter instead of the invention as a whole is improper analysis. Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1383, 231 USPQ 81, 93 (Fed.Cir.1986), cert. denied, 480 U.S. 947 (1987). Thus the trial court did not properly determine that prior art limited application of the doctrine of equivalents. Therefore, the trial court clearly erred in concluding that the accused device did not infringe the patented device under the doctrine of equivalents.
 
 
 29
 Finally, the trial court also seems to have compared the accused device with the Gargoyles' product. Infringement is determined, however, by comparing the accused device with the patent claims, not the patentee's commercial embodiment. Martin v. Barber, 755 F.2d 1564, 1567, 225 USPQ 233, 235 (Fed.Cir.1985). Any comparison of the accused device to Gargoyles' product would be clear error.
 
 CONCLUSION
 
 30
 This court affirms the trial court's judgment of noninfringement of the design patent and the trial court's findings of no literal infringement of claims 2 and 8 of the utility patent. This court vacates the trial court's judgment of noninfringement of claims 1, 2, and 8 of the utility patent. This court remands for proper literal infringement analysis with respect to claim 1, and consideration of the doctrine of equivalents with respect to claim 1, if it applies, and with respect to claims 2 and 8 of the utility patent.
 
 COSTS
 
 31
 Each party shall bear its own costs.