Paul P. WOLSTENHOLME, Plaintiff,

v.

COVERED STORAGE CORP., et al., Defendants.

Nos. C-2-91-1118, C-2-92-417 and C-2-92-488.

United States District Court, S.D. Ohio, Eastern Division.

Feb. 1, 1994.

John W. Donahue, Gilbert N. Henderson, Biebel & French, Dayton, OH, for Paul P. Wolstenholme.

Robert A. Schroeder, Steven J. Kirschner, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, CA, for ConAgra, Inc.

James H. Irmen, Marshall & Melhorn, Toledo, OH, for Metamora Elevator Co.

Kevin J. Osterkamp, Roetzel & Andress, L.P.A., Columbus, OH, for Covered Storage Corp.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider Plaintiff's objections to the Report and Recommendation filed by the Magistrate Judge on June 10, 1993. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b).

### I. Background

Plaintiff Paul P. Wolstenholme brought these actions against Defendants ConAgra, Inc., Metamora Elevator Company, Covered Storage Corp., and Countrymark Co-op, Inc. alleging that Defendants infringed U.S. Patent RE 32,536 ('536 Patent) and U.S. Patent 4,493,248 ('248 Patent). Both patents relate to a type of "cover on first" grain storage system where a cover is positioned over a support surface before grain is introduced under the cover to form a pile.[1] The actions were subsequently consolidated for pretrial purposes and referred to the Magistrate Judge for any necessary proceedings on pretrial issues, including Report and Recommendations on case-dispositive motions.

In March 1993, Defendants filed motions for partial summary judgment of non-infringement, arguing that—as a matter of law—Plaintiff's patents were not infringed by a grain storage system which operated with the perimeter of the cover secured during the introduction of grain. On June 10, 1993, the Magistrate Judge filed a Report and Recommendation wherein he recommended that Defendants' motions be granted. The Magistrate Judge construed the '536 patent and the '248 patents and determined that they required the perimeter of the cover to be unsecured during the introduction of grain. Therefore, the Magistrate Judge concluded that neither patent was infringed by a grain storage system in which the perimeter of the cover was secured.

On June 24, 1993, Plaintiff timely objected to the Magistrate's Report and Recommendation. Plaintiff does not contest the Magistrate's recommendation to grant summary judgment with regard to the '536 patent. Rather, Plaintiff's objections relate to the Magistrate's interpretation of claim 1 of the '248 patent and, in turn, to his corresponding determination regarding non-infringement of the '248 patent.

### II. Claim Interpretation

■ A two-step analysis is used in determining whether a patent has been literally infringed. First, the court must construe the claims to determine their scope. *Hormone Research Found. v. Genentech, Inc.,* 904 F.2d 1558, 1562 (Fed.Cir.1990), *cert. dismissed,* 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991). Second, the court must determine "whether each limitation of the properly construed claims is found" in the accused device. *Id.* As intimated above, the instant dispute involves the first step of infringement analysis, known as claim interpretation.

■ Claim interpretation is essentially a question of law. *Id.* To ascertain the true

---

1. More precisely, the '536 patent relates to the grain storage system (an apparatus patent), while the '248 patent relates to the method of storing flowable granular material (a method patent).

meaning of a claim, a court should first examine the language of the claim itself. *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 882 (Fed.Cir. 1988). The terms of a claim are to be given their ordinary meaning absent evidence that the inventor used them differently. *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1579 (Fed.Cir.1988). If the meaning of terms are not in dispute, a court may interpret their scope as a matter of law. Otherwise, a court may resort to extrinsic evidence, including the specification, prosecution history, prior art, expert testimony, and other claims in the patent. *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1021 (Fed.Cir.1987).

Claim 1 of the '248 patent is as follows: [2]

1. Method of storing a flowable granular material comprising the steps of:

positioning a plurality of mating, flexible and impervious cover sections upon a support surface;

securing said cover sections together to define a cover having a centrally located opening;

grasping said cover in the region of said central opening and lifting the surrounding portion of said cover to a predetermined height; *said cover* sagging naturally from said height and *being free to pull inwardly as necessary to accommodate said lifting;*

introducing said granular material into said opening until said granular material comes into contact with said cover;

*continuing ʻsaid introduction to cause said granular product to lift said cover and carry it outwardly away from the point of said introduction,* thereby defining a pile which extends along a normal angle or repose in an outward and downward direction from the point of said introduction and which is entirely covered by said cover throughout said introduction.

.    .    .    .    .

Joseph T. Jakubek's March 9, 1993 Declaration, Ex. 1 (emphasis added). Claim 1 does not explicitly state that the perimeter of the

cover must be unsecured during filling. Defendants assert, however, that in order for the cover to be pulled "inwardly" upon lifting and to be carried "outwardly" upon filling, as required by claim 1, the perimeter of the cover must be free to move (*i.e.,* unsecured). But Wolstenholme argues that claim 1 requires only a certain amount of slack in the interior regions of the cover and, given sufficient slack, the perimeter may be secured prior to and during filling.

■ In the Court's opinion, resolution of this dispute turns on the scope of the term "cover." If "cover" refers to the whole of the cover, then claim 1 requires an unsecured perimeter so that it, along with the rest of the cover, can move inwardly and outwardly. If "cover" refers to any part of the cover, then claim 1 does not require an unsecured perimeter. Instead, claim 1 requires only that there be sufficient slack in the cover to enable the interior portion to move inward and outward.

Claim 1 defines "cover" as "a plurality of mating, flexible and impervious cover sections" which are secured together "to define a cover having a centrally located opening." Under this definition, "cover" encompasses the entire cover, from the perimeter to the centrally located opening. Ostensibly, then, when claim 1 provides for the cover to pull inwardly and to carry outwardly, the perimeter of the cover, as well as its interior, must be free to move. This inference is buttressed by the fact that, when something less than the entire cover is affected in claim 1, a word or phrase modifies "cover." For example, claim 1 contains the following limitation: "grasping said cover *in the region of said central opening and lifting the surrounding portion* of said cover to a predetermined height...." In this limitation, the phrase "in the region of said central opening" effectively limits the scope of term "cover." Thus, the Court concludes that "cover," as defined and used in claim 1, is synonymous with "the whole cover" unless the language of the claim specifies otherwise.

---

**2.** Claim 1 is the only independent claim in the '248 patent. Therefore, if claim 1 is not

infringed, none of the claims are infringed.

This construction of claim 1 finds added support in the prosecution history of the '248 patent. Commencing with Plaintiff's original application for U.S. Patent 4,454,807 ('807 patent), which embodied both the apparatus claims of the '536 patent and the method claims of the '248 patent, Plaintiff repeatedly represented that the claims contained in the '807 patent required the perimeter of the cover to free to move during filling. Jakubek's March 9, 1993 Declaration, Ex. 4 at 46, 58, 59, 61.

Moreover, in Plaintiff's divisional application for the '248 patent, claim 1 explicitly provided for an unsecured perimeter:

1. Method of storing a flowable granular material comprising the steps of:

position a plurality of mating, flexible and impervious cover sections upon a support surface;

securing said cover sections together to define a cover having a centrally located opening;

grasping said cover in the region of said central opening and lifting the surrounding portion of said cover to a predetermined fill height; *the perimeter* of said cover being free to pull inwardly as necessary to accommodate lifting;

introducing said granular material into said opening until said granular material comes into contact with said cover;

continuing said introduction to cause said granular product to lift said cover and carry it outwardly away from the point of said introduction;

further continuing said introduction until said granular product reaches said fill height and defines a pile which extends along a normal angle of repose in an outward and downward direction from the point of said introduction and which is entirely covered by said cover; and

*securing the perimeter of said cover to confine said pile.*

Jakubek's March 9, 1993 Declaration, Ex. 9 at 18 (emphasis added). The Patent Office

rejected this application, however, on the basis that the method defined by claims 1–3 would be obvious to a person of ordinary skill in the art by virtue of the Wunderwald patent[3] and a prior public use[4] of a grain storage facility. *Id.* at 91–92. Significantly, the Patent Office noted that the system in public use made it obvious to secure the perimeter of the cover of Wunderwald *after* introducing the grain. *Id.* The Patent Office also commented that Wunderwald made it obvious to secure the perimeter of the system in public use *before* introducing the grain. *Id.* at 92. Thus, the Patent Office identified the issue of cover securement as the sole basis for rejecting claim 1.

In response, Plaintiff amended claim 1 by, among other things, deleting the word "perimeter" and the phrase "securing the perimeter of said cover to confine said pile."[5] Plaintiff characterized the deletions as the removal of "minor limitations not believed to be essential to the invention." *Id.* at 98. Plaintiff now argues that, by deleting references to "perimeter," he broadened claim 1 to permit the perimeter of the cover to be secured, as well as unsecured, prior to and during filling. If this were so, however, Plaintiff's characterization of the deletion as "minor" would have been misleading, not only because of the representations made in obtaining the '807 patent, but also because of representations made in finally obtaining the '248 patent.

Plaintiff told the Patent Office that "Wunderwald deals with a grain storage problem so vastly different from the problem solved by the present invention that *Wunderwald teaches nothing of any relevance to this examination.*" *Id.* at 99 (emphasis added). Plaintiff then went on to note that

[a] central feature of Wunderwald's storage method relates to the problem of air pocketing which, of course, can exist only in a storage system having an integral bottom or floor. Wunderwald solves this problem by *staking the perimeter of his*

---

3. The *Wunderwald* patent requires the perimeter of the cover to be secured during filling.

4. The public use involves temporary grain storage systems in which a grain pile is first erected, and then manually covered.

5. This phrase was incorporated into dependent claim 5.

*container* and drawing the center tightly upward to define an angle greater than the angle of repose of the grain which is to be introduced.... Thus it is clear that his grain never comes into contact with the cover until after loading has been completed. At that point the cover is lowered down against the surface of the pile.

*Id.* at 99–100 (emphasis added). Surely, if Plaintiff intended to eliminate this important distinction between Wunderwald and his invention, he would not in good faith call the deletion "minor." Nor would he then rely upon this same distinction to obtain the '248 patent. Consequently, Plaintiff cannot now claim that, like Wunderwald, his patent provides that the cover may be secured during filling. *See Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452 (Fed.Cir. 1985) ("the prosecution history ... limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance").

### III. Conclusion

Upon consideration and being duly advised, the Court hereby adopts the Magistrate Judge's Report and Recommendation in its entirety. Defendants' motions for partial summary judgment are, therefore, **GRANTED.**

**IT IS SO ORDERED.**